**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DENNIS ADKINS, for himself and other persons similarly situated, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NESTLE PURINA PETCARE COMPANY, WAGGIN' TRAIN LLC, WAL-MART STORES INC., and DOES 1-10, | ) ) ) |
| | ) |
| Defendants. | ) |

**COMPLAINT – CLASS ACTION**

**MATTERS RELEVANT TO MULTIPLE CLAIMS**

**INTRODUCTION**

1.      This is a class action brought by plaintiff Dennis Adkins, on behalf of all consumers who purchased certain dog treats manufactured, marketed, distributed or sold by defendants.   The dog treats were unsafe, were defective, were dangerous, were culpably misrepresented as safe and healthy, and did not conform to applicable implied and express warranties.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction, under 28 U.S.C. §1332(d).  The amount in controversy exceeds $5 million, exclusive of interest and costs.  Mr. Adkins and at least one member of the class is of diverse citizenship to the defendants.  There are over 100 class members.

3.      Personal jurisdiction over each defendant is proper because each defendant

(a)      does and has done business in Illinois and within this District, with the claims asserted herein arising from such business; and

(b)      committed the tortious acts which are the subject of the complaint

1

in Illinois, and within this district.

4.      Venue in this district is proper for the same reasons.

**PARTIES**

5.      Plaintiff Dennis Adkins is an individual who resides in the Northern District of Illinois.

6.      Defendant Nestle Purina Petcare Company ("Nestle Purina") is a Missouri corporation, with its principal place of business at Checkerboard Square, St. Louis, Missouri. It does business in Illinois. Its registered agent and office is CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois.

7.      Nestle Purina is engaged in the business of manufacturing, producing, marketing, distributing, advertising or selling dog treats.

8.      Nestle Purina began selling dog food in 1957. It has spent millions of dollars in promoting trust and confidence among consumers in its pet food products. It holds itself out to the public as a manufacturer of safe, nutritious and high-quality pet food.

9.      Defendant Waggin' Train LLC ("Waggin' Train") is a limited liability company chartered under Delaware law, with its principal place of business at 1924 Pearman Dairy Rd, #A, Anderson, South Carolina. Its registered agent and office is CT Corporation System, 2 Office Park Court, Columbia, South Carolina.

10.      Waggin' Train manufactured, imported, packaged, advertised and sold the dog treats at issue.

11.      Waggin' Train has spent millions of dollars in promoting trust and confidence among consumers in its pet food products. It holds itself out to the public as a manufacturer of safe, nutritious and high-quality pet food.

12.      Since 2010, Waggin' Train has been owned by, and is in the process of being integrated into, Nestle Purina.

13.      Defendant Wal-Mart Stores Inc. ("Wal-Mart") is a Delaware corporation,

2

with its principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas. It does

business in Illinois. Its registered agent and office is CT Corporation System, 208 South LaSalle

Street, Suite 814, Chicago, Illinois.

14.     Wal-Mart distributes and sells dog treats manufactured by Waggin' Train,

LLC and Nestle Purina Petcare Company.

15.     Does 1-10 are other entities involved in the manufacture, sale, distribution

and marketing of the dog treats.

## FACTS

16.     On or about March 11, 2012, Dennis Adkins purchased from a Wal-Mart a

package of Waggin' Train "Yam Good" dog treats, consisting of "chicken wrapped yams."

17.     The product was manufactured by Waggin' Train, under the control

and direction of  Nestle Purina.

18.     The packaging of the product Mr. Adkins purchased is represented by

Exhibit A.  This packaging stated, among other things,

   (a)     that the chicken wrapped yams contained in the package were
           "wholesome,"

   (b)     that the chicken wrapped yams contained in the package were
           "nutritious & great tasting,"

   (c)     that "it's what nature intended,"

   (d)     that "we looked everywhere to find a treat that was better for our
           dogs,"

   (e)     that the treats were "just wholesome goodness,"

   (f)     that the purchaser should "feel confident that you are giving your
           dog a wholesome treat that is both healthy and delicious," and

   (g)     that "it means a lot to us to help you treat your dog right."

19.     All of these representations, found on the packaging represented by

Exhibit A, were false.

20.     The product was not wholesome, was not nutritious, and was unhealthy.

21.     In fact, the FDA had issued warnings, as recently as November 18, 2011, about dog illnesses after consuming chicken jerky dog treats which were made in China. Such warnings are contained within Exhibit B.

22.     The packaging did not warn of any danger from feeding its contents to dogs.

23.     Waggin' Train and Nestle Purina market their products without first determining that the products are safe, and will not have a deleterious effect on dogs.

24.     Waggin' Train and Nestle Purina marketed the "Yam Good" dog treats without first determining that the products was safe, and that the dog treats would not have a deleterious effect on dogs.

25.     Mr. Adkins owned a small Pomeranian, between 11 and 25 pounds, named Cleopatra (also known as Cleo). On March 13, 2012, she was nine years old, and in good health.

26.     Between March 13, 2012 and March 15, 2012, Mr. Adkins gave one of the treats to Cleopatra daily, which he chopped into two to three pieces. Mr. Adkins made no other changes in her diet.

27.     Immediately thereafter, Cleopatra became sick and, on March 26, 2012, died of kidney failure.

28.     Mr. Adkins owns another nine year old Pomeranian, named Pharaoh. Mr. Adkins did not feed any of the "Yam Good" treats to him. Pharaoh did not become ill.

29.     Nestle Purina's Waggin' Train brand of chicken jerky products, per the label found on Exhibit A, "Made In China." On information and belief, the products are made in the People's Republic of China.

30.     Prior to Mr. Adkins's purchase, Nestle Purina and Waggin' Train, LLC had received complaints of more than 500 incidents in which dog treats containing chicken jerky

imported from China caused dogs to become sick or die.

31.     Numerous complaints concerning Waggin' Train chicken jerky treats sickening or killing dogs are on the Internet. Examples are attached as Exhibit C.

32.     On February 21, 2012, the following article appeared on a blog, www.PoisonedPets.com:

> "Number one selling dog treat in US causing kidney failure, death
>
> February 21st, 2012
>
> Makers of Waggin' Train dog treats Nestle Purina continue to deny today any problem with their treats despite hundreds of reports of complaints to the FDA. They insist that their strict quality control of the chicken jerky manufactured in China prevents any problems with possible adulteration of their product. Further, Nestle-Purina states if the FDA can't find the contaminant then they do not have to take the product off the market or take any responsibility for the illness and death of pets associated with their product.
>
> There are two glaring problems with Nestle-Purina's argument; one, if the FDA doesn't know what the contaminant is yet – how does Nestle-Purina know? The contaminant can only be identified by first determining what the contaminant is before they can test for it. If the FDA and the University toxicology laboratories that work with the FDA have been unable to discover what the contaminant is since the problem was first recognized in 2007, how is Nestle-Purina able to? If Nestle-Purina knows something the FDA doesn't know, then it is their duty to inform the FDA. Nestle-Purina cannot unequivocally assure the product's safety until they can first show that the product has tested negative for the (as yet unknown) contaminant.
>
> Second, based on the first argument it would be prudent for Nestle-Purina to issue a precautionary recall of their product until such time the contaminant is discovered. True, Nestle-Purina is not by law required to do so, but as a manufacturer who is genuinely concerned for the health and safety of the pets consuming their product, it is their ethical and moral duty to do so. Further, if the Wal-Mart, the largest retailer on the globe, would take a proactive stance out of an abundance of caution and remove the product until such time the manufacturer can prove the product is indeed safe, surely other retailers would follow suit."

33.     Waggin' Train placed warnings concerning its products on its web site.

34.     Notwithstanding these warnings, Waggin' Train, and Nestle Purina, continued to market the product as being wholesome. The portion of the Waggin' Train website promoting "Yam Good" dog treats (Exhibit D) as of April 16, 2012, still described the "Yam Good" product as follows:

> The name says it all! Sure to please even the pickiest of dogs, these wholesome yams wrapped with chicken are packed with flavor and goodness. Waggin' Train Yam Good snacks will satisfy your dog with the natural sweetness of yams.

35.     Waggin' Train and Nestle Purina placed no warnings concerning their products on their  packaging.

36.     Waggin' Train and Nestle Purina knew that there was a substantial risk of death or harm associated with its dog treats.

37.     Neither Mr. Adkins nor any other reasonable person would feed dog treats to their dogs knowing that there was a substantial risk of death or illness from doing so. Mr. Adkins did not learn of the FDA warning or see the warnings on the Waggin Train web site until after his dog died.

38.     Waggin' Train and Nestle Purina intentionally concealed known facts concerning the safety of their dog treats in order to increase or maintain sales.

39.     The fact that the dog treats might cause serious illness or death either at the recommended level, or at some larger level, was a material fact to Mr. Adkins and other dog owners.  Most pet owners would not want to feed their pet such a treat, or have such a treat in a location where an animal might obtain more than the recommended number of servings.

40.     The conduct of Waggin' Train, LLC and Nestle Purina recklessly or maliciously disregarded the rights of Mr. Adkins and the class members for motives of pecuniary gain.

41.     Wal-Mart adopts the marketing representations of Waggin' Train.

42.     Mr. Adkins gave notice of his claim to defendants.

43.     Mr. Adkins suffered economic damages of more than $2,300 as a result of defendants' conduct, including:

(a)     the value of his dog,

(b)     veterinary expenses incurred in treating the dog and attempting to save her life,

        (c)      the cost of disposition of the dog, and

        (d)      the cost of the defendants' product.

44.     Consumers in Illinois, and across the United States, suffered damages similar to those suffered by Mr. Adkins, as a result of defendants' conduct.

## COUNT I – BREACH OF IMPLIED WARRANTY; UNIFORM COMMERCIAL CODE AND MAGNUSON-MOSS ACT

45.     Mr. Adkins incorporates paragraphs 1-44.

46.     This claim is against all defendants.

47.     Under the Uniform Commercial Code ("UCC") – in force throughout the United States except in Louisiana and Puerto Rico – there is an implied warranty in the sale of goods by a merchant that the goods shall be merchantable. The Illinois citation is 810 ILCS 5/2-314.

48.     Under UCC §2-314(2), "Goods to be merchantable must be at least such as.... (c) are fit for the ordinary purposes for which such goods are used; and... (f) conform to the promises or affirmations of fact made on the container or label if any."

49.     The dog treats sold by defendants were not fit for feeding to dogs, and did not conform to the promises or affirmations of fact made on the packaging.

## CLASS ALLEGATIONS

50.     Mr. Adkins brings this claim, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf of a class and two subclasses.

51.     The class consists of all persons in the United States (except Louisiana and Puerto Rico) who purchased any dog treat product containing chicken jerky manufactured or sold by Nestle Purina or Waggin' Train and containing chicken imported from China, on or after a date four years prior to the filing of this action.

52.     The first subclass consists of class members who purchased such products from Wal-Mart.

53.     The second subclass consists of class members whose dogs suffered harm

or death due to the consumption of defendants' products.

54.     The members of the class and subclasses are so numerous that joinder of all members is impracticable.  Thousands of persons purchased the dog treats at issue, and hundreds of dogs died as a result.

55.     There are questions of law and fact common to the members of the classes, which predominate over any questions that affect only individual class members.  The predominant common questions include:

(a)     whether the products sold by defendants were materially defective in design and formulation and unfit for consumption by dogs,

(b)     whether the products sold by defendants were contaminated,

(c)     whether defendants failed to properly test the products prior to market entry (or at any other relevant time),

(d)     whether defendants failed to warn of the dangers of their products, and

(e)     whether defendants breached implied warranties.

56.     Mr. Adkins's claim is typical of the claims of the class members.  All are based  on the same factual and legal theories.

57.      Mr. Adkins will fairly and adequately represent the interests of the class members.  Mr. Adkins has retained counsel experienced in consumer class action litigation.

58.     A class action is superior to other alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.

WHEREFORE, Mr. Adkins requests that the Court enter judgment in favor of plaintiff and the class, and against defendants, for:

(a)     Compensatory damages;

(b)     Attorney's fees and litigation expenses (pursuant to 15 U.S.C. §1610), and costs of suit; and

(c)     Such other or further relief as the Court deems proper.

## COUNT II – BREACH OF EXPRESS WARRANTY; UNIFORM COMMERCIAL CODE

59.    Mr. Adkins incorporates paragraphs 1-44.

60.    This claim is against all defendants.

61.    Under UCC §2-313, in force throughout the United States except Louisiana and Puerto Rico (the Illinois citation is 810 ILCS 5/2-313), the representations on defendants' packaging created an express warranty that the contents shall conform to the representations.

62.    Defendants' representations became a part of the basis of the bargain.

63.    Defendants breached those representations, as described above.

## CLASS ALLEGATIONS

64.    Mr. Adkins brings this claim, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf of a class and two subclasses.

65.    The class consists of all persons in the United States (except Louisiana and Puerto Rico) who purchased any dog treat product containing chicken jerky manufactured or sold by Nestle Purina or Waggin' Train and containing chicken imported from China, on or after a date four years prior to the filing of this action.

66.    The first subclass consists of class members who purchased such products from Wal-Mart.

67.    The second subclass consists of class members whose dogs suffered harm or death due to the consumption of defendants' products.

68.    The members of the class and subclasses are so numerous that joinder of all members is impracticable.  Thousands of persons purchased the dog treats at issue, and hundreds of dogs died as a result.

69.    There are questions of law and fact common to the members of the classes, which predominate over any questions that affect only individual class members.  The

9

predominant common questions include:

- (a) whether the products sold by defendants were materially defective in design and formulation and unfit for consumption by dogs,
- (b) whether the products sold by defendants were contaminated,
- (c) whether defendants failed to properly test the products prior to market entry (or at any other relevant time),
- (d) whether defendants failed to warn of the dangers of their products, and
- (e) whether defendants breached express warranties;

70. Mr. Adkins's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

71. Mr. Adkins will fairly and adequately represent the interests of the class members. Mr. Adkins has retained counsel experienced in consumer class action litigation.

72. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

WHEREFORE, Mr. Adkins requests that the Court enter judgment in favor of plaintiff and the class, and against defendants, for:

- (a) Compensatory damages;
- (b) Costs of suit; and
- (c) Such other or further relief as the Court deems proper.

### COUNT III – CONSUMER FRAUD

73. Mr. Adkins incorporates paragraphs 1-44.

74. This claim is against all defendants.

75. Defendants engaged in unfair and deceptive acts and practices, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. ("Consumer Fraud Act"). Defendants specifically violated 815 ILCS 505/2 by

(a)     selling dog treats that were materially defective in design and formulation or contaminated, and unfit for consumption by dogs;

(b)     representing that the treats were healthy and wholesome when they were not (whether on the packaging (Exhibit A), on the internet (Exhibit D), or otherwise);

(c)     selling dog treats with such representations without properly testing the products to determine if they conformed to the representations;

(d)     continuing sales of the dog treats after defendants knew or should have known that the representations being made about them were false; and

(e)     either failing to warn of the dangers of their products, or concealing such dangers, or both.

76.     The acts of defendants were done in the course of trade and commerce.

77.     Damages, in the form of the illnesses and deaths suffered by consumers' pets, and the fact that the product has no value if it is unwholesome and unfit for consumption by animals, were suffered by Illinois consumers as a result of defendants' actions.

**CLASS ALLEGATIONS**

78.     Mr. Adkins brings this claim, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf of a class and two subclasses.

79.     The class consists of all persons in Illinois who purchased any dog treat product containing chicken jerky manufactured or sold by Nestle Purina or Waggin' Train and containing chicken imported from China, on or after a date three years prior to the filing of this action.

80.     The first subclass consists of class members who purchased such products from Wal-Mart.

11

81.     The second subclass consists of class members whose dogs suffered harm or death due to the consumption of defendants' products.

82.     The members of the class and subclasses are so numerous that joinder of all members is impracticable.  Thousands of persons purchased the dog treats at issue, and hundreds of dogs died as a result.

83.     There are questions of law and fact common to the members of the classes, which predominate over any questions that affect only individual class members.  The predominant common questions include:

(a)     whether the products sold by defendants were materially defective in design and formulation and unfit for consumption by dogs,

(b)     whether the products sold by defendants were contaminated,

(c)     whether defendants failed to properly test the products prior to market entry (or at any other relevant time),

(d)     whether defendants misrepresented the qualities and benefits of their dog treats,

(e)     whether defendants failed to warn of the dangers of their products, and

(f)     whether defendants' culpability is such that they should be required to pay punitive damages.

84.      Mr. Adkins's claim is typical of the claims of the class members.  All are based  on the same factual and legal theories.

85.      Mr. Adkins will fairly and adequately represent the interests of the class members.  Mr. Adkins has retained counsel experienced in consumer class action litigation.

86.     A class action is superior to other alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.

WHEREFORE, Mr. Adkins requests that the Court enter judgment in favor of

plaintiff and the class, and against defendants, for:

    (a)    Compensatory damages equal to the price paid for the dog treats;

    (b)    Punitive damages;

    (c)    Injunctive relief (pursuant to 815 ILCS 505/10a(c)), in the form of an order enjoining defendants from either

        (1)    manufacturing (or causing the manufacture of) products for sale in Illinois as food for household pets, or

        (2)    distributing (or causing the distribution of) products for sale in Illinois as food for household pets, or

        (3)    selling (or causing the sale of) products in Illinois as food for household pets,

unless the food for household pets being manufactured, distributed or sold

        (a)    is fit for purpose and is not harmful to the health of household pets, and

        (b)    contains no ingredients likely to cause injury or death to household pets and is otherwise wholesome, and

        (c)    is not sold in packaging containing false statements as to the food's wholesomeness or nutritiousness, and

        (d)    otherwise fully complies with the provisions of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*;

    (d)    Attorney's fees, litigation expenses, and costs of suit; and

    (e)    Such other or further relief as the Court deems proper.

### COUNT IV – COMMON LAW FRAUD

87.    Mr. Adkins incorporates paragraphs 1-44.

88.     This claim is against Waggin' Train and Nestle Purina.

89.     Defendants committed fraud by

(a)     representing that the treats were healthy and wholesome when they were not (whether on the packaging (<u>Exhibit A</u>), on the internet (<u>Exhibit D</u>), or otherwise),

(b)     selling dog treats with such representations without properly testing the products to determine if they conformed to the representations,

(c)     continuing sales of the dog treats after defendants knew that the representations about them were false, and

(d)     either failing to warn of the dangers of their products, or concealing such dangers, or both.

90.     Any person purchasing defendants' dog treats relied on such representations and omissions, as they go to the fitness of the product for its intended use.

91.     Damages, in the form of the illnesses and deaths suffered by consumers' pets, and the fact that the product has no value if it is unwholesome and unfit for consumption by animals, were suffered by consumers across the United States as a result of defendants' actions.

## CLASS ALLEGATIONS

92.     Mr. Adkins brings this claim, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf of a class and two subclasses.

93.     The class consists of all persons who purchased any dog treat product containing chicken jerky manufactured or sold by Nestle Purina or Waggin' Train and containing chicken imported from China, on or after a date five years prior to the filing of this action.

94.     The first subclass consists of  class members who purchased such products from Wal-Mart.

14

95.     The second subclass consists of class members whose dogs suffered harm or death due to the consumption of defendants' products.

96.     The members of the class and subclasses are so numerous that joinder of all members is impracticable.  Thousands of persons purchased the dog treats at issue and hundreds of dogs died as a result.

97.     There are questions of law and fact common to the members of the classes, which predominate over any questions that affect only individual class members.  The predominant common questions include:

(a)     whether the products sold by defendants were materially defective in design and formulation and unfit for consumption by dogs,

(b)     whether the products sold by defendants were contaminated,

(c)     whether defendants failed to properly test the products prior to market entry (or at any other relevant time),

(d)     whether defendants misrepresented the qualities and benefits of their dog treats,

(e)     whether defendants failed to warn of the dangers of their products, and

(f)     whether defendants' culpability is such that they should be required to pay punitive damages.

98.      Mr. Adkins's claim is typical of the claims of the class members.  All are based  on the same factual and legal theories.

99.      Mr. Adkins will fairly and adequately represent the interests of the class members.  Mr. Adkins has retained counsel experienced in consumer class action litigation.

100.     A class action is superior to other alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.

WHEREFORE, Mr. Adkins requests that the Court enter judgment in favor

plaintiff and the class, and against defendants, for:

(a) Compensatory damages;

(b) Punitive damages;

(c) Attorney's fees, litigation expenses, and costs of suit; and

(d) Such other or further relief as the Court deems proper.

## COUNT V – UNJUST ENRICHMENT

101. Mr. Adkins incorporates paragraphs 1-44.

102. This claim is against all defendants.

103. Defendants obtained a benefit, to which they were not entitled, through the sale of substandard dog treats for the purchase price thereof.

104. Defendants had knowledge of the benefit conferred upon them by Mr. Adkins and others like him. Defendants made a calculated profit from the sales of the dog treats, while Mr. Adkins and others like him suffered damages as a result of the transactions.

105. Defendants have voluntarily and deliberately accepted and retained those profits and benefits, without delivering safe and healthy dog treats.

106. Defendants' retention of the money they obtained (from plaintiff and others like him) from the sale of defective dog treats constitutes unjust enrichment.

## CLASS ALLEGATIONS

107. Mr. Adkins brings this claim, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf of a class and a subclass.

108. The class consists of all persons who purchased any dog treat product containing chicken jerky manufactured or sold by Nestle Purina or Waggin' Train and containing chicken imported from China, on or after a date five years prior to the filing of this action.

109. The subclass consists of class members who purchased such products from Wal-Mart.

16

110.    The members of the class and subclass are so numerous that joinder of all members is impracticable.  Thousands of persons purchased the dog treats at issue, and hundreds of dogs died as a result.

111.    There are questions of law and fact common to the members of the classes, which predominate over any questions that affect only individual class members.  The predominant common questions include:

(a)    whether the products sold by defendants were materially defective in design and formulation and unfit for consumption by dogs;

(b)    whether the products sold by defendants were contaminated;

(c)    whether defendants failed to properly test the products prior to market entry (or at any other relevant time);

(d)    whether defendants negligently, recklessly or intentionally delayed initiating recalls of the products;

(e)    whether defendants negligently, recklessly or intentionally failed to warn of the dangers of their products; and

(f)    whether defendants were unjustly enriched as a result of their wrongful conduct.

112.    Mr. Adkins's claim is typical of the claims of the class members.  All are based  on the same factual and legal theories.

113.    Mr. Adkins will fairly and adequately represent the interests of the class members.  Mr. Adkins has retained counsel experienced in consumer class action litigation.

114.    A class action is superior to other alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.

WHEREFORE, Mr. Adkins requests that the Court enter judgment in favor of plaintiff and the class, and against defendants, for:

(a)    Compensatory damages,

(b)     Costs of suit, and

(c)     Such other or further relief as the Court deems proper.

## COUNT VI – NEGLIGENCE

115.     Mr. Adkins incorporates paragraphs 1-44.

116.     This claim is against Waggin' Train and Nestle Purina.

117.     Defendants owed Mr. Adkins and others like him a duty of care to offer pet food free from deleterious and harmful effects.

118.     Defendants breached that duty of care by selling dog treats that were harmful and deleterious,

(a)     without conducting adequate quality control and testing,

(b)     without using proper manufacturing and production practices,

(c)     without adequately investigating reports of pet deaths and illnesses following consumption of their dog treats,

(d)     without placing adequate warnings on the packaging, and

(e)     by otherwise acting in a careless, negligent or reckless manner.

119.     Defendants knew or should have known that their dog treats posed an unacceptable and unreasonable risk of harm to dogs, which would not be recognized by purchasers of their product, and that the consumption of their products by dogs would result in foreseeable and reasonably avoidable property damage.

120.     Defendants' conduct was negligent, careless and /or reckless.

121.     As a direct and proximate result of defendants' conduct, Mr. Adkins and the class members suffered property damage, including sickness and death of dogs.

## CLASS ALLEGATIONS

122.     Mr. Adkins brings this claim, pursuant to Fed.R.Civ.P. 23(a) and (b)(3), on behalf of a class of all persons who purchased any dog treat product containing chicken jerky manufactured or sold by Nestle Purina or Waggin' Train and containing chicken imported from

18

China, on or after a date five years prior to the filing of this action, whose dogs suffered harm or death due to the consumption of defendants' products.

123. The members of the class are so numerous that joinder of all members is impracticable. Thousands of persons purchased the dog treats at issue, and hundreds of dogs died as a result.

124. There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members. The predominant common questions include:

    (a)    whether the products sold by defendants were materially defective in design and formulation and unfit for consumption by dogs;

    (b)    whether the products sold by defendants were contaminated;

    (c)    whether defendants failed to properly test the products prior to market entry (or at any other relevant time);

    (d)    whether defendants negligently, recklessly or intentionally delayed initiating recalls of the products;

    (e)    whether defendants negligently, recklessly or intentionally failed to warn of the dangers of their products;

    (f)    whether defendants breached their duty of care to Mr. Adkins and the class members; and

    (g)    whether defendants' culpability is such that they should be required to pay punitive damages.

125. Mr. Adkins's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

126. Mr. Adkins will fairly and adequately represent the interests of the class members. Mr. Adkins has retained counsel experienced in consumer class action litigation.

127. A class action is superior to other alternative methods of adjudicating this

19

dispute.  Individual cases are not economically feasible.

WHEREFORE, Mr. Adkins requests that the Court enter judgment in favor of plaintiff and the class, and against defendants, for:

        (a)      Compensatory damages,

        (b)      Punitive damages,

        (c)      Costs of suit, and

        (d)      Such other or further relief as the Court deems proper.

### COUNT VII – STRICT PRODUCTS LIABILITY; DEFECTIVE DESIGN OR MANUFACTURE

128.    Mr. Adkins incorporates paragraphs 1-44.

129.    This claim is against all defendants.

130.    Mr. Adkins and the class members purchased dog treats which were manufactured, distributed or sold by defendants.

131.    The dog treats were defective and inherently and unreasonably dangerous and unsafe for their intended use because they caused injury, illness or death to the dogs of Mr. Adkins and others like him.

132.    The dog treats failed to perform in the manner reasonably to be expected, in light of their nature and intended function.

133.    As a direct and proximate cause of the unreasonably dangerous condition of the dog treats, Mr. Adkins and others like him suffered property damage and economic loss.

### CLASS ALLEGATIONS

134.    Mr. Adkins brings this claim, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf of a class of all persons who purchased any dog treat product containing chicken jerky manufactured or sold by Nestle Purina or Waggin' Train and containing chicken imported from China, on or after a date two years prior to the filing of this action, whose dogs suffered harm or death due to the consumption of defendants' products.

135.    The members of the class  are so numerous that joinder of all members is

impracticable. Thousands of persons purchased the dog treats at issue, and hundreds of dogs died as a result.

136.    There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members. The predominant common questions include:

(a)    whether the products sold by defendants were materially defective in design and formulation and unfit for consumption by dogs;

(b)    whether the products sold by defendants were contaminated;

(c)    whether defendants failed to properly test the products prior to market entry (or at any other relevant time); and

(d)    whether defendants' culpability is such that they should be required to pay punitive damages.

137.    Mr. Adkins's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

138.    Mr. Adkins will fairly and adequately represent the interests of the class members. Mr. Adkins has retained counsel experienced in consumer class action litigation.

139.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

WHEREFORE, Mr. Adkins requests that the Court enter judgment in favor of plaintiff and the class, and against defendants, for:

(a)    Compensatory damages,

(b)    Punitive damages,

(c)    Costs of suit, and

(d)    Such other or further relief as the Court deems proper.

## COUNT VIII – STRICT PRODUCTS LIABILITY; FAILURE TO WARN

140.    Mr. Adkins incorporates paragraphs 1-44.

21

141.    This claim is against all defendants.

142.    Mr. Adkins and others like him purchased dog treats which were manufactured, distributed or sold by defendants.

143.    Defendants' product was under the exclusive control of defendants, and was sold without adequate warnings regarding the health risks of the product.

144.    Defendants had a duty to warn purchasers of the health risks posed by their product in an effective manner.  Such warnings should have been placed on the packaging and at the point of sale, or should have otherwise been placed in a way calculated to give reasonable fair warning to consumers.

145.    As a direct and proximate cause of the defendants' failure to warn of the health risks of  the dog treats, Mr. Adkins and others like him suffered property damage and economic loss.

## CLASS ALLEGATIONS

146.    Mr. Adkins brings this claim, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf of a class of all persons who purchased any dog treat product containing chicken jerky manufactured or sold by Nestle Purina or Waggin' Train and containing chicken imported from China, on or after a date two years prior to the filing of this action, whose dogs suffered harm or death due to the consumption of defendants' products.

147.    The members of the class  are so numerous that joinder of all members is impracticable.  Thousands of persons purchased the dog treats at issue, and hundreds of dogs died as a result.

148.    There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members.  The predominant common questions include:

(a)    whether defendants failed to warn of the dangers of their products; and

(b)     whether defendants' culpability is such that they should be

required to pay punitive damages.

149.    Mr. Adkins's claim is typical of the claims of the class members.  All are based  on the same factual and legal theories.

150.    Mr. Adkins will fairly and adequately represent the interests of the class members.  Mr. Adkins has retained counsel experienced in consumer class action litigation.

151.    A class action is superior to other alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.

WHEREFORE, Mr. Adkins requests that the Court enter judgment in favor of Plaintiff and the class and against defendants for:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Costs of suit; and

(d)     Such other or further relief as the Court deems proper.


/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Thomas E. Soule
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.


/s/ Daniel A. Edelman
Daniel A. Edelman

23

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


<u>/s/ Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)