IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DENNIS ADKINS, MARIA HIGGINBOTHAM,       )
MARY ELLIS, DWAYNE HOLLEY, KAIYA         )
HOLLEY, DEBORAH COWAN, BARBARA           )
PIERPONT, CINDI FARKAS, TERRY            )
SAFRANEK, ELIZABETH MAWAKA, ROBIN        )
PIERRE, JILL HOLBROOK, MARY ELLEN        )
DESCHAMPS, TRACEY BAGATTA, HAL           )
SCHEER, S. RAYMOND PARKER, KRISTINA      )
IRVING, KATHLEEN MALONE, JEANNIE         )
JOHNSON, REBEL ELY, and RITA DESOLLAR,   )
for themselves and several classes,      )
                                         )
            Plaintiffs,                  )      No.  12 C 2871
      v.                                 )
                                         )      Consolidated with
NESTLE PURINA PETCARE COMPANY,           )
WAGGIN' TRAIN, LLC, WAL-MART STORES,     )      12 C 0880 (D. Conn.)
INC., doing business as Wal-Mart and Sam's Club, )   12 C 4774 (N.D. Cal.)
TARGET CORPORATION, COSTCO               )      12 C 4785 (N.D. Cal.)
WHOLESALE CORPORATION, BJ'S              )
WHOLESALE CLUB, INC., PET SUPPLIES       )      Judge Robert W. Gettleman
PLUS OF CONNECTICUT XI, LLC, CVS         )
CAREMARK CORPORATION, doing business     )
as Caremark Advanced Technology Pharmacy, LLC)
and CVS Pharmacy, Inc., WALGREEN         )
COMPANY, and DOES 1-20,                  )
                                         )
            Defendants.                  )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs' Consolidated Amended Complaint ("complaint") brings a putative class action

on behalf of themselves and other purchasers of chicken jerky dog treats manufactured by

defendants Nestle Purina PetCare Company ("Nestle Purina") and Waggin' Train LLC

("Waggin' Train"), and sold by defendants Wal-Mart Stores, Inc. ("Walmart"), Target

Corporation ("Target"), Costco Wholesale Corporation ("Costco"), BJ's Wholesale Club Inc.

("BJ's"), Pet Supplies Plus of Connecticut XI, LLC ("Pet Supplies Plus"), CVS Caremark

Corporation ("CVS"), and Walgreen Company ("Walgreens") (collectively, "defendants"). Plaintiffs allege that defendants' Chinese-made treats are unsafe because they caused their dogs to become ill or die after eating them. The complaint is brought by 21 plaintiffs from various states whose pets were allegedly harmed after eating the treats: Dennis Adkins and Rita DeSollar (Illinois); Maria Higginbotham (Washington); Mary Ellis, Jeannie Johnson, and Rebel Ely (California); Dwayne and Kaiya Holley, Robin Pierre, and Tracey Bagatta (New York); Deborah Cowan (Texas); Barbara Pierpont (Pennsylvania); Cindi Farkas (New Jersey); Terry Safranek (Ohio); Elizabeth Mawaka, Mary Ellen Deschamps, and Hal Scheer (Connecticut); Jill Holbrook (Florida); S. Raymond Parker (Tennessee); Kristina Irving (Alabama); and Kathleen Malone (Louisiana).

Plaintiffs assert eight counts: breach of implied warranty (Count I); breach of express warranty (Count II); violations of state consumer protection statutes (Count III); common law fraud (Count IV); unjust enrichment (Count V); negligence (Count VI); and strict products liability for defective design and failure to warn (Counts VII-VIII). Counts IV and VI are against Nestle Purina and Waggin' Train only. All other counts are asserted against all defendants. Plaintiffs seek monetary relief, including punitive damages, and injunctive relief.

Defendant BJ's has moved to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). The other defendants have moved to dismiss all counts of the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons that follow, defendant BJ's motion is granted, and defendants' 12(b)(6) motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiffs contend that they purchased defective and dangerous chicken jerky dog treats manufactured by Waggin' Train and Nestle Purina and sold by Wal-Mart, Target, Costco, BJ's, CVS, Pet Supplies Plus, and Walgreens ("merchant defendants").  Some of the treats (including, for example, a product called "Jerky Tenders") consisted of chicken jerky alone.  Other products (including, for example, "Yam Good" treats) consisted of chicken jerky combined with other food products.  Shortly after being fed these treats, and without any other change in diet, plaintiffs' dogs became ill or died.  All of the illnesses were similar, with most dogs experiencing symptoms such as vomiting, diarrhea, and kidney failure.  Plaintiffs assert that the treats were defective and the proximate cause of the injuries to their dogs, although they do not identify the specific defect.  They attach and cite to a Food and Drug Administration ("FDA") Advisory issued in 2011 which stated that it was investigating reports of illnesses in pets that ate jerky treat products from China.  The Advisory also states that despite investigation and testing by the FDA and other labs, "scientists have not been able to determine a definitive cause for the reported illness" or "identif[y] a contaminant," and it cautions that the reported illness may be due to other causes.

Plaintiffs further allege that defendants knew the treats were defective, and despite warnings and investigations by the FDA and reports of over 500 incidents, they continued to offer these treats for sale as being safe for consumption.  Specifically, the packaging of the Jerky Tender and Yam Good treats stated, among other things, that the treats were "wholesome,"

---

[1]The facts are taken from plaintiffs' complaint and are accepted as true for the purposes of the instant motion. McReynolds v. Merrill Lynch & Co., Inc. 694 F.3d 873, 879 (7th Cir. 2012).

"nutritious," and "healthy and delicious" (plaintiffs allege that similar statements were made on the packaging of all other Waggin' Train products containing chicken jerky). Plaintiffs claim that they saw these representations and relied on them when making the decision to purchase the treats, and that no pet owner would purchase food for their pet if they knew it was dangerous. Plaintiffs allege that the merchant defendants Wal-Mart, Target, Costco, BJ's, Pet Supplies Plus, CVS, and Walgreens adopted these representations of Waggin' Train and Nestle Purina. Despite being warned about the harm these treats caused, through (among other things) service of process in the instant case, the merchant defendants continued to sell the dog treats and took no action to protect consumers.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). To provide the defendants with "fair notice of what the claim is and the grounds upon which it rests," the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 555 (quoting Fed.R.Civ.P. 8(a)(2)). In addition, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level." Twombly, 550 U.S. at 555.

**I**.     **BJ's Motion to Dismiss for Lack of Personal Jurisdiction**

BJ's was named in an amended complaint filed by Elizabeth Mawaka in the Connecticut

district court.  The complaint alleged that BJ's had sold some of the subject pet treats from one

of its locations in New York.  When BJ's was added, there was already a pending motion to

transfer venue to this court, where the instant action was pending.  BJ's was the only defendant

to oppose this motion, arguing that because it never sold any of the subject pet treats in Illinois,

this court would lack personal jurisdiction over it.  Thus, the action would not be transferable

because it could not have been brought in the transferee district. 28 U.S.C. § 1404(a).  The

Connecticut district court ordered the case to be transferred, but it did not address BJ's

objections, which BJ's renews before this court.

**Personal Jurisdiction**

Plaintiffs have the burden of establishing a prima facie case for personal jurisdiction.

Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir.2002).  When determining whether

personal jurisdiction exists over a defendant, "the allegations in the complaint are to be taken as

true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are to be

resolved in [the plaintiff's] favor."  Turnock v. Cope, 816 F.2d 332, 333 (7th Cir.1987).  Facts

contained in defendants' affidavits that remained unrefuted by plaintiffs are deemed true,

however.  Glass v. Kemper Corp., 930 F.Supp. 332, 337 (N.D.Ill.1996).

"A federal district court sitting in diversity in Illinois has jurisdiction over a non-resident,

non-consenting defendant if an Illinois state court would have jurisdiction over that party."

McIlwee v. ADM Industries, Inc., 17 F.3d 222, 223 (7th Cir.1994).  Jurisdiction under the

Illinois long arm statute is coextensive with the requirements of due process under the United

States Constitution.  Original Creations, Inc. v. Ready Am., Inc., 836 F. Supp. 2d 711, 713 (N.D.

Ill. 2011) (citing Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir.2010)).  For an exercise of

personal jurisdiction to satisfy due process, the defendant must have minimum contacts with the

forum such that maintenance of the suit does not offend "traditional notions of fair play and

substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  This

determination depends on whether the plaintiff asserts general or specific jurisdiction against the

defendant.  "General jurisdiction ... is for suits neither arising out of nor related to the

defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic

general business' contact with the forum."  RAR, Inc. v.. Turner Diesel, Ltd., 107 F.3d 1272,

1277 (7th Cir.1997).  Specific jurisdiction, on the other hand, refers to jurisdiction over a

defendant in a suit "arising out of or related to the defendant's contacts with the forum."

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

## DISCUSSION

According to Melaine Tilden ("Tilden"), BJ's Senior General Liability Claims

Coordinator, BJ's is a Delaware Corporation with its principle place of business in

Massachusetts.  BJ's sells membership to its customers to enable them to shop in its wholesale

clubs in several states, but not Illinois, in which BJ's has no offices or clubs.  It "transacts no

business, marketing, or advertising activities within the state of Illinois."  BJ's does operate a

website from which a non-member from Illinois could purchase goods.  However, according to

Tilden, BJ's records "do not show that BJ's has ever sold or shipped any of the subject dog food

treats to customers in the State of Illinois."

These facts are not disputed by plaintiffs.  Indeed, in their complaint they allege that "[all] defendants other than BJ's … do business in Illinois, and the claims asserted herein arise from that business … BJ's … [does] business in Connecticut, and the claims asserted herein arise from that business."  Plaintiffs also concede that BJ's has not waived, or consented to, personal jurisdiction.  Plaintiffs instead insist that because the Connecticut district court decided the issue of this court's personal jurisdiction when it ordered the case transferred, that decision is the "law of the case" (citing cases denying motions for retransfer).  The court rejects this argument because the Connecticut district court did not rule on or address the issue of this court's personal jurisdiction over BJ's.  "The doctrine of law of the case comes into play only with respect to issues previously determined."  Quern v. Jordan, 440 U.S. 332, 348, n.18 (1979); Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4478, at 789 (1981) ("questions that have not been decided do not become law of the case merely because they could have been decided").

Because plaintiffs concede that their claims against BJ's do not arise from any business conducted in Illinois, BJ's cannot be subject to specific jurisdiction.  BJ's could conceivably be subject to general jurisdiction through sales of its other products to Illinois online, but only if such sales are substantial.  See People of Ill. ex rel. Madigan v. Hemi Group, LLC, 2008 WL 4545349, at *3 (C.D.Ill. 2008) (finding that defendant's sales of cigarettes to Illinois residents through its websites was not enough for general jurisdiction where plaintiff did not present evidence of substantial sales or extensive advertising in Illinois).  Plaintiff has not alleged any such sales, however, nor does it contradict BJ's assertions that it lacks additional contacts (such as advertising) with Illinois that might justify general jurisdiction.

Plaintiffs request the opportunity to conduct jurisdictional discovery in the hope of finding grounds for personal jurisdiction over BJ's. The Seventh Circuit has held that "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir.2000). Because plaintiffs have failed to make such a prima facie showing, the court denies plaintiffs' request for discovery.

For the reasons stated above, BJ's motion to dismiss for lack of personal jurisdiction (Doc. 100) is granted, and plaintiffs' request for jurisdictional discovery is denied.

## II.     **Defendants' Motion to Dismiss for Failure to State a Claim**

### A. **Governing Law**

According to defendants, Illinois choice of law principles require that the laws of the plaintiffs' home states be applied in assessing plaintiffs' claims. Plaintiffs respond that this analysis is unnecessary for two reasons. First, they argue that defendants have failed to meet their burden of showing a substantive conflict of law, and thus this court should apply the law of the forum. Zurich Insurance Co. v. Heil Co., 815 F.2d 1122, 1123 (7th Cir. 1987). Defendants respond by pointing to several important differences, including the fact that several plaintiffs' claims are preempted by state consumer protection laws in their home states.

Plaintiffs also assert that it is premature to consider the choice-of-law issue prior to class certification. They note that "choice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation." Mirfasihi v. Fleet Mortg. Corp., 450 F.3d 745, 750 (7th Cir.2006). Plaintiffs misinterpret Mirfasihi, however, because "[n]owhere in the case does the Seventh Circuit

address the timing of choice-of-law determinations relative to motions to dismiss." Lantz v. Am.

Honda Motor Co., Inc., 2007 WL 1424614 (N.D. Ill. 2007) (citing Mirfasihi, 450 F.3d at 750).

Plaintiffs also cite this court's decision in American International Group., Inc. v. ACE INA

Holdings, Inc., 722 F. Supp. 2d 948, 974-975 (N.D. Ill. 2010) ("AIG"), as supporting their

contention that the choice-of-law question should be delayed until class certification.  As

defendants note, however, in AIG the parties agreed that a choice-of-law analysis could be

deferred until the class certification stage.  Id. at 974.  Because no such agreement exists here,

AIG is inapposite.

Turning to the merits of defendants' conflict argument, federal courts sitting in Illinois

follow Illinois' choice-of-law rule in determining which state's law governs a plaintiff's state

law claims.  Illinois has adopted the most significant relationship test for deciding among

conflicting laws.  Ingersoll v. Klein, 262 N.E.2d 593, 595 (Ill. 1970).  Under this test, the law of

the place of the injury controls unless Illinois has a more significant relationship with the

occurrence and with the parties.  Id.  When applying the most significant relationship test, the

court considers four factors: (1) where the injury occurred; (2) where the injury-causing conduct

occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered.

Id. at 596.  The court must look at the contacts of each jurisdiction under these factors and then

evaluate those contacts in light of the policies underlying the laws of those jurisdictions.

In the instant case, 19 out of 21 plaintiffs allege that they reside in states other than

Illinois and that they purchased the chicken jerky treats and fed them to their pets in their home

states.  With the exception of the two plaintiffs who reside in Illinois, the complaint alleges no

other facts tying any of defendants' alleged misconduct or the plaintiffs' alleged injuries to

Illinois. Thus, under Illinois choice of law, the laws of the states where each of the plaintiffs

reside govern the claims alleged in the complaint.

Plaintiffs request leave to fully brief this issue, relying on <u>International Jensen Inc. v.</u>

<u>Emerson Radio Corp.</u>, 1997 WL 43229 (N.D. Ill. 1997), in which one party had assumed without

any discussion that a particular state's law applied while the other simply said that such

application was not a foregone conclusion. The court in that case therefore set a separate

briefing schedule, reasoning that a choice-of-law determination must be made "before we make

any decision on the sufficiency of the complaint." <u>Id.</u> at *8. In the instant case, unlike

<u>International Jenson</u>, the factual record requires no further development. It is obvious from the

facts alleged in plaintiffs' own complaint that the laws of the plaintiffs' home states should be

applied.

      **B.  <u>Existence of a Defect and Proximate Cause</u>**

Defendants first argue that all counts should be dismissed because plaintiffs have failed

to allege sufficient facts to plausibly establish the existence of a defect in the chicken jerky

treats, or that there is a causal connection between plaintiffs' dogs becoming ill or dying and the

consumption of the treats. The gist of their argument is that plaintiffs must identify the specific

defect or contaminate that caused the pets' harm.

Defendants are correct that "[t]he fact that an injury has occurred, in and of itself, is

insufficient to show the existence of a product defect." <u>Schultz v. Hennessy Indus., Inc.</u>, 222 Ill.

App. 3d 532 (1991). It is also well established, however, that a "prima facie case that a product

was defective and that the defect existed when it left the manufacturer's control is made by proof

that in the absence of abnormal use or reasonable secondary causes the product failed 'to

perform in the manner reasonably to be expected in light of (its) nature and intended function.'"
Tweedy v. Wright Ford Sales, Inc., 64 Ill. 2d 570, 574 (1976) (quoting 51 A.L.R.3d 8, § 5[a]).
Therefore plaintiffs need not allege the specific defect if the circumstantial evidence "exclude[s]
other extrinsic causes of the accident." Vuletich v. Alivotvodic, 73 Ill. App. 3d 927 (1979).
This is known as the "malfunction theory" of products liability, and it has been adopted in some
form by most states. Metropolitan Property & Cas. Ins. Co. v. Deere & Co., 302 Conn. 123, 133
(2011) (citing 1 L. Frumer & M. Friedman, Products Liability (2010) § 8.06[3], pp. 8–262
through 8–270 and nn. 22–48 (collecting cases)).

Defendants argue that use of the malfunction theory in the instant case is inappropriate
because the theory's underlying purpose is to allow plaintiffs to submit their cases to the jury
when the product is unavailable. Ellis v. Beemiller, Inc., 2012 WL 5864528, at *4 (W.D. Pa.
2012). It is undisputed that the chicken jerky treats at issue are still available. Plaintiffs respond
that the malfunction theory is necessary because they have no knowledge of the processes and
procedures used to manufacture the treats, and thus are no more knowledgeable about a defect as
"a man on the street." Although this theory might be most useful in cases where the product is
unavailable, there is no reason to limit its application to those cases. It can be used to relieve
plaintiffs from the burden of pointing to a specific defect when the circumstantial evidence
clearly indicates the product was in some way defective, whether or not the product is still
available. In other words, the theory "does not require that the [product] be available." Hogan
v. Raymond Corp., 777 F. Supp. 2d 906, 918 (W.D. Pa. 2011) (emphasis added) (allowing the
plaintiff to proceed with a malfunction theory claim even though the product "is presently
located and available for inspection").

11

Under the malfunction theory, plaintiffs must plead facts plausibly suggesting that the chicken jerky treats failed to perform as an ordinary consumer would expect, and that this failure was not the result of abnormal use or secondary causes. <u>Tweedy</u>, 64 Ill. 2d at 574. Each plaintiff's claims are essentially the same. Each alleges that the treats failed to perform as an ordinary consumer would expect, since the average consumer would not expect that the consumption of jerky treats would cause their pets' illness or death. Specifically, each plaintiff's dog became ill within a short period of time after the consuming defendants' chicken jerky treats. All of the dogs had similar symptoms, with many experiencing vomiting, diarrhea, and kidney failure. Plaintiffs further allege that none of the dogs had any other changes in diet, nor were any dogs fed an undue number of these treats. Some of the dogs recovered, but only after they stopped eating the treats. These factual allegations, viewed in the light most favorable to plaintiffs, are sufficient to suggest above a speculative level that the product was defective, and that no other secondary cause was responsible for the dogs' illnesses. Plaintiffs therefore have set forth sufficient facts to state a plausible claim for relief under the malfunction theory, and defendants' motion to dismiss for failure to allege a specific defect is denied.

### C.  <u>Exclusivity Statutes</u>

Defendants argue that many of the claims of plaintiffs Mawaka, Scheer, Deschamps, Malone, Farkas, Safranek, Parker, and Higginbotham should be dismissed because they are preempted by product liability statutes in their home states of Connecticut, Louisiana, New Jersey, Ohio, Tennessee, and Washington. Specifically, they move to dismiss the following claims: all claims of Connecticut plaintiffs Mawaka, Scheer, and Deschamps; all claims of Louisiana plaintiff Malone against Nestle Purina and Waggin' Train; all claims by New Jersey

plaintiffs Farkas and Pierre except for breach of warranty in Count II; all claims by Ohio plaintiff

Safranek except Counts II and V; all claims by Tennessee plaintiff Parker; and all claims by

Washington plaintiff Higginbotham except for Counts II-IV.

### (i) Connecticut

The Connecticut Products Liability Act ("CPLA") provides the exclusive avenue for

seeking relief for claims based on allegations of a product defect. Conn. Gen. Stat. § 52-572n(a)

(a product liability claim under the CPLA "shall be in lieu of all other claims against product

seller, including actions of negligence, strict liability and warranty, for harm caused by a

product"). Defendants argue that because all claims asserted by plaintiffs Deschamps, Mawaka,

and Scheer fall squarely within the exclusive scope of the CPLA, they should be dismissed.

Calzone v. Costco, Inc., 2011 WL 1168601, at *1 (Conn. Super. Ct. 2011) (dismissing common

law negligence claim because CPLA provides exclusive remedy for claims falling within its

scope).

Plaintiffs argue that the CPLA does not necessarily require dismissal of these claims,

citing Walters v. Howmedica Ostenoics Corp., 676 F.Supp.2d 44, 48 (D. Conn. 2009). In

Walters, the court found that the CPLA did not preempt other common law theories of product

liability; rather, under the CPLA, the plaintiff retains the right to allege the traditional theories of

recovery along with the statutory basis for recovery under one unified count. Id. In the instant

case, however, plaintiffs have not alleged these various common law claims under a unified

CPLA count, but instead have alleged these as separate causes of action under the common law

and the Connecticut Unfair Trade Practices Act. Because plaintiffs have not alleged any claims

under the CPLA, defendants' motion to dismiss all claims of plaintiffs Deschamps, Mawaka, and Scheer is granted without prejudice.

### (ii) New Jersey

The New Jersey Products Liability Act ("NJPLA") is the exclusive avenue for all claims except breach of express warranty relating to an allegedly defective product. N.J. Stat. Ann. 2A:58C-1(b)(3) (defining "product liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty"). Defendants argue that all claims asserted by New Jersey plaintiffs Farkas and Pierre, except claims for breach of express warranty in Count II, should be dismissed as preempted by the NJPLA.

In response, plaintiffs cite Magnus v. Fortune Brands, Inc., 41 F.Supp.2d 217, 225-227 (E.D.N.Y. 1999), in which the court denied the defendant's motion to dismiss the New Jersey plaintiff's products liability claims because "the nature of and factual circumstances surrounding Magnus's New Jersey claims…satisfy the notice requirement under Rule 8(a), notwithstanding plaintiffs' failure to mention the NJPLA in the complaint." Id. at 227. Defendants note, however, that at the time Magnus was decided the New Jersey Supreme Court had not ruled on whether the NJPLA was to be interpreted as the "exclusive" avenue of recovery. Since then, the New Jersey Supreme Court has found that the NJPLA created "one unified, statutorily defined theory of recovery for harm caused by a product." In re Lead Paint Litig., 924 A.2d 484, 503 (N.J. 2007). Because of this ruling, the courts have dismissed separately alleged common law claims. See Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 703 (D.N.J. 2011) (dismissing the plaintiff's claims for breach of implied warranty, unjust enrichment and

consumer fraud claims as subsumed under the NJPLA). Therefore, defendants' motion to dismiss all claims of plaintiffs Farkas and Pierre, except for breach of express warranty in Count II, is granted without prejudice.

### (iii) Louisiana

The Louisiana Products Liability Act (LPLA) "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Defendants argue that all claims asserted by Louisiana plaintiff Malone against Nestle Purina and Waggin' Train should be dismissed as preempted by the LPLA. See Grenier v. Medical Eng'g Corp., 99 F. Supp. 2d 759, 764-66 (W.D. La. 2000); Cooper v. Wyeth, Inc., 2010 WL 2653321, at *2 (M.D. La. 2010) (dismissing negligence, fraud, and breach of implied warranty claims as barred by the LPLA). Plaintiffs do not respond directly to defendants' argument, except to suggest that their same arguments regarding the CPLA and NJPLA can also be applied to the LPLA. Because these prior arguments have been rejected, defendants' motion to dismiss all claims asserted by Louisiana plaintiff Malone against Nestle Purina and Waggin' Train is granted without prejudice.

### (iv) Ohio

The Ohio Products Liability Act ("OPLA") "abrogate[s]" all common law product liability claims or causes of action." Ohio Rev. Code § 2307.71(B)(13); see also Tolliver v. Bristol-Myers Squibb Co., 2012 WL 3074538, at *3 (N.D. Ohio 2012) ("Because the OPLA abrogates all common law product liability claims, [p]laintiffs' product liability claims must fall under one of the four types of claims permitted by the OPLA: manufacturing defect, design defect, inadequate warning, and noncompliance with manufacturers' representation.").

15

Defendants argue that all of Ohio plaintiff Safranek's claims in Counts I, III-IV, and VI-VIII should be dismissed.  See Evans v. Hanger Proesthetics & Orthotics, Inc., 735 F. Supp. 2d 785, 797-98 (N.D. Ohio 2012); Hempy v. Breg, Inc., 2012 WL 380119, at *2-*3 (S.D. Ohio 2012) (dismissing plaintiff's claims for negligence, breach of express warranty, and breach of implied warranty).  Plaintiffs again do not directly respond to this argument.  Therefore, defendants' motion to dismiss plaintiff Safranek's claims in Counts I, III-IV, and VI-VIII is granted without prejudice.

### (v)  Tennessee

The Tennessee Products Liability Act ("TPLA") is the exclusive avenue for bringing claims relating to allegedly defective products.  See Tenn. Code Ann. § 29-28-102 (broadly defining "product liability actions" as including "all actions based upon … strict liability in tort; negligence; breach of warranty, express or implied … or under any other substantive legal theory in tort or contract whatsoever").  Defendants argue that all of Tennessee plaintiff Parker's claims are preempted by the TPLA and should be dismissed.  See Smith v. Merial Ltd., 2011 WL 2119100, at *5 (D.N.J. 2011) (dismissing plaintiff's breach of implied warranty, unjust enrichment, and consumer fraud claims on the ground that such claims were preempted by the TPLA).  Plaintiffs do not respond to defendants' argument, likely because they cannot. Defendants' motion to dismiss all claims by Tennessee plaintiff Parker is granted without prejudice.

### (vi)  Washington

Washington law recognizes only a single product liability cause of action under the Washington Product Liability Act ("WPLA").  See Wash. Rev. Code § 7.72.010(4) (broadly

defining "product liability claim" as including strict liability, negligence, breach of express or implied warranty and failure to warn claims); <u>see</u> <u>also</u> <u>Macias v. Saberhagen Holdings, Inc.</u>, 282 P.3d 1069, 1073-74 (Wash. 2012) ("The WPLA is the exclusive remedy for product liability claims. It supplants all common law claims or actions based on harm caused by a product.") (internal citations omitted). Accordingly, defendants argue that all of Washington plaintiff Higginbotham's claims, except for her fraud, consumer, and UCC warranty claims in Counts II-IV, should be dismissed as preempted by the WPLA. <u>See</u> <u>McFarland v. APP Pharm., LLC</u>, 2011 WL 2413797 (W.D. Washin. 2011) (dismissing plaintiff's common law causes of action as abrogated by the WPLA). Once again, because plaintiffs do not respond to this argument. Defendants' motion to dismiss all of Washington plaintiff Higginbotham's claims is granted without prejudice.

### D. <u>Adequacy of Alleged Misrepresentations</u>

Defendants argue that plaintiffs' consumer protection act and common law fraud claims (Counts III and IV) should be dismissed for several reasons. While the parties disagree about whether the heightened pleading requirements of Rule 9(b) also apply to the consumer protection claims, this argument need not be addressed because plaintiffs' factual allegations are sufficient to meet the heightened standard of Rule 9(b) for both Counts. The requirements of common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." <u>Connick v. Suzuki Motor Co. Ltd.</u>, 675 N.E.2d 584, 591 (Ill. 1996); <u>Tricontinental Industries Ltd. v. PricewaterhouseCoopers LLP</u>, 475 F.3d 824, 841 (7th Cir.

2007).  Under Rule 9(b), "facts such as the identity of the person making the misrepresentation,
the time, place, and content of the misrepresentation, and the method by which the
misrepresentation was communicated to the plaintiff [must] be alleged in detail.  In contrast,
even under Rule 9(b), malice, intent, knowledge, and other condition of mind of a person maybe
averred generally."  Hefferman v. Bass, 467 F.3d 596, 601 (7th Cir. 2006).

Defendants' first argument is that many of the allegedly fraudulent statements identified
by plaintiffs are non-actionable puffery.  "Puffery is 'exaggerated advertising, blustering, and
boasting upon which no reasonable buyer would rely.'"  Rosenthal Collins Group, LLC v.
Trading Technologies, Int'l, Inc., 2005 WL 3557947, at *10, *11 (N.D. Ill. 2005) (quoting
Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997)).  "[P]roduct
superiority claims that are vague or highly subjective often amount to nonactionable puffery."
Southland Sod Farms, 108 F.3d at 1145.  Even if defendants are correct that some of the
statements are puffery (such as those that claim the treats were "what nature intended" and
"nothing but the best"), they do not attempt to argue that other statements, such as those
promoting the treats' "wholesomeness," can be classified as puffery.  Plaintiffs are correct that
"wholesome" at the very least conveys the safety of the treats to the consumer, and therefore
cannot be puffery.  Chacanaca v. Quaker Oats Co. 752 F.Supp.2d 1111, 1126 (N.D. Cal. 2010).
Defendants instead reassert the already rejected argument that the complaint fails to plausibly
plead a defect.  Thus, defendants' motion to dismiss based on the argument that the complaint
fails to identify an actionable misrepresentation is denied.

Defendants next argue that plaintiffs fail to adequately plead reliance, a prima facie
element of common law and statutory fraud under the laws of each of the plaintiffs' home states.

18

Reliance, or proximate cause is also an element of each of the relevant state statutes. According to defendants, plaintiffs must allege facts that would show, for each plaintiff, which specific statement each plaintiff saw and found to be material, when each plaintiff saw the statement, where the statements seen by each plaintiff were displayed, and how the statements were relied upon in making their purchase. See Accord, CoMentis Inc. v. Purdue Research Foundation, 765 F.Supp.2d 1092, 1109-1111 (N.D. Ind. 2011) ("a party must particularize the fraud claims by alleging the 'who, what, when, where, and how' of the alleged fraud"). Defendants point to several "glaring" failures in the complaint. First, 14 of 21 plaintiffs do not allege that they purchased the products specifically described in the complaint. Several plaintiffs purchased other Waggin' Train treats, and others do not specify which brand of Waggin' Train treats they purchased. Moreover, the statements made on the Waggin' Train website about the quality of the treats cannot be used to support reliance, because none of the plaintiffs alleged that they saw these statements prior to purchasing the treats.

Plaintiffs rebut each of these arguments. First, plaintiffs allege that because they presumed that defendants would not sell dangerous pet food, they relied on the fact that the treats were not pulled from the shelves. The complaint specifically alleges that had each plaintiff known of the risks and dangers posed by these treats, they would never have purchased the treats and fed them to their dogs. As for the particularity requirements, plaintiffs identify numerous specific statements made on the Jerky Tenders and Yam Good treats' packaging. While most plaintiffs do not allege that they purchased these specific brands, they do allege that similar statements were made on all Waggin' Train treats containing the defective chicken jerky. Plaintiffs saw these statements at the time they purchased the treats (they note that a consumer

19

would not normally purchase pet food without looking at the package first), and they relied on them in their decision to purchase what they believed to be healthy food for their dogs. Finally, plaintiffs do not make any claim that they relied on the statements made on Waggin' Train's website. Because plaintiffs' allegations meet the particularly requirement of Rule 9(b), defendants' motion to dismiss plaintiffs' common law and statutory fraud claims is denied.

Alternatively, defendants argue that plaintiffs' consumer protection act claims against the merchant defendants should be dismissed because plaintiffs do not identify any false or misleading statements made by any of them. The only statements identified in the complaint are those on the chicken jerky packaging and the Waggin' Train Website—neither of which can be attributed to the merchant defendants. Plaintiffs respond by arguing that the merchant defendants "adopted the representations of Nestle Purina and Waggin' Train." They further allege that after the merchant defendants were explicitly warned about the harm caused by the chicken jerky treats (by, among other things, service of process in this case), they continued to sell the treats anyway. By selling toxic jerky treats that caused sickness and death in dogs, without providing adequate warning to consumers, plaintiffs claim that merchant defendants engaged in "textbook violations" of the consumer protection law. See IWOI, LLC v. Monaco Coach Corp., 581 F.Supp.2d 994, 1006 (N.D. Ill. 2008).

Defendants correctly point out, however, that even if the merchant defendants were adequately warned by service of process in this case, it says nothing regarding their knowledge at the time of plaintiffs' purchase. Unlike IOWI, in which the defendant had knowledge of the defect and concealed it before the plaintiff purchased the product, no such actions are alleged against the merchant defendants in the instant case. See IWOI, 581 F. Supp. 2d at 996

20

("According to Plaintiff, at the time Defendants sold Plaintiff the [product], Defendants knew and actively concealed that the [product] contained material manufacturing defects"). Because plaintiffs fail to allege any actionable false statements made by the merchant defendants, defendants' motion to dismiss plaintiffs' consumer protection act claims in Count III against the merchant defendants is granted.

### E.  CLRA Damage Claims

Defendants have moved to dismiss plaintiffs Ellis, Johnson, and Ely's California Legal Remedies Act ("CLRA") claim in Count III of the complaint for failure to provide the requisite 30-day notice.  See Cal. Civ.Code § 1782(a).  Plaintiffs concede that they failed to meet the notice requirement and request leave to amend.  See Deitz v. Comcast Corp., 2006 WL 3782902 (N.D. Cal. 2006) (holding that where a claim for damages under the CLRA was subject to dismissal due to failure to comply with the notice requirement, plaintiff could amend to add a damages claim under the CLRA after the deficiency had been cured).  Defendants argue that the claim should be dismissed with prejudice, however, citing Cattie v. Wal-Mart Stores, Inc., 504 F.Supp.2d 939 (S.D.Cal. 2007), where the court dismissed a CLRA claim with prejudice after plaintiff failed to provide the requisite notice.  Id. at 950.

The California courts are split on the issue of whether dismissal of a CLRA claim for violation of § 1782(a)'s notice requirement should be granted with or without prejudice. Trabakoolas v. Watts Water Technologies, Inc., 2012 WL 2792441 (N.D. Cal. 2012).  The statute itself is silent.  Id.  "The purpose of the notice requirement of section 1782 is to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements."  Outboard Marine Corp. v. Superior Court, 52 Cal. App. 3d 30, 40, 124 Cal. Rptr.

852, 858 (Ct. App. 1975). According to the line of cases cited by defendants, this purpose "may only be accomplished by a literal application of the notice provisions." Id, 52 Cal. App. 3d 30, 41, 124 Cal. Rptr. 852, 859; see also Cattie, 504 F.Supp.2d at 950. This approach was criticized in Deitz as unwarranted, where the court reasoned that because the legislature "specifically contemplated that an action seeking injunctions can be amended to include a damages claim after the thirty days have run, the goal of the legislature would best be served by allowing amendment in the circumstances of this case" Id., 2006 WL 3782902 at *6.

The Trabakoolas court, after examining these opposing viewpoints in detail, turned to the text and legislative history of the statute to determine which approach best captured the intent of the legislature:

> Nothing in the legislative history indicates that the 30–day notice period was intended to bar consumer actions or was not curable. Under section 1782(d), the notice could be provided as a matter of right within 30 days of filing an action for injunctive relief…The corollary must therefore also exist, that is, that a court may grant leave at any later date. The Legislature provided a 30–day window to resolve quickly and efficiently consumer complaints. It inured to the consumers' benefit. To interpret the statute in such a way as to convert that same provision into a sword against consumers would violate the fundamental principle upon which the Legislature enacted the CLRA.

Id., 2012 WL 2792441 at *8.

This court agrees with the reasoning of Trabakoolas. Accordingly, the court grants leave for plaintiffs to provide notice under section 1782(d). The CLRA claim in Count III is dismissed without prejudice.

### F.  Implied Warranty Claims and Lack of Privity

Defendants argue that the implied warranty claims of plaintiffs Adkins, DeSollar, Higginbotham, Bagatta , Holley, Pierre , Safranek, Mawaka, Deschamps, Scheer, Holbrook and

Irving in Count I should be dismissed because the laws of these plaintiffs' home states (Illinois, Washington, New York, Ohio, Connecticut, Florida, and Alabama) require privity. See Bd. Of Educ. v. A, C and S, Inc., 546 N.E.2d 580, 595 (Ill. 1989) ("Generally, under the contract principles of the Uniform Commercial Code, in order to state a claim against the defendant for breach of implied warranty, privity must exist between the plaintiff and defendant.").

Plaintiffs respond by arguing first that the same exception to privity that allows the recipient of an express warranty to sue should apply to "promises or affirmations of fact made on the container or label," which give rise to both express and implied warranties. Accordingly to plaintiffs, the reason for creating both express and implied warranties based on the same representations is to increase the circumstances under which such representations are actionable, by making them actionable even if they do not form part of the basis of the bargain or are received after the purchase. 810 ILCS 5/2-314 cmt 10. Second, plaintiffs argue that there is no privity requirement "[where] an article of food or drink…is sold in a sealed container, an implied warranty is imposed on the manufacturer that the article was fit for that purpose, enabling a consumer to recover for the warranty's breach." Warren v. Coca-Cola Bottling Co. of Chicago, 519 N.E.2d 1197, 1201-1202 (Ill. App. Ct. 1988). Finally, plaintiffs argue that privity should be found where, as here, the defect existed when it left the defendant's control. See Alvarez v. American Isuzu Motors, 749 N.E.2d 16, 22 (Ill.App.Ct. 2001).

Defendants object to plaintiffs' first argument as an undue extension of the UCC, since plaintiffs cite no case law in support. They also correctly note that Alvarez did not find privity between the parties, making that case inapposite. Defendants fail to distinguish Warren adequately, however. Their only argument is that Warren established a narrow exception for

23

sealed food packages intended for "human," as opposed to "canine," consumption, but they give

no reason why the exception should be so limited. The fact that these packages were sealed by

the manufacturer demonstrates that the defect existed when the product left defendants'

control—this is what justifies the privity exception, not the issue of who or what consumes the

product. See McAfee v. Cargill, Inc., 121 F. Supp. 5, 6 (S.D. Cal. 1954) (holding that lack of

privity did not bar the plaintiff's action against the manufacturer of dog food for breach of

warranty because "[t]he same public policy considerations present for the protection of humans

in the use of packaged and processed foods are also present where instead we deal with

animals"). Defendants' motion to dismiss the implied warranty claims of these plaintiffs is

therefore denied.

### G. Express Warranty Claims

Defendants argue that Count II of the plaintiffs' complaint should be dismissed as to all

defendants for several reasons. First, they argue that plaintiffs fail to plead any actionable

express warranties or breach of those warranties. Second, they argue that the claims should be

dismissed because plaintiffs failed to adequately rely on any express warranty or that it otherwise

became "part of the basis of the bargain." UCC § 2-313(1)(a). Alternatively, defendants request

that plaintiffs' breach of express warranty claims be dismissed as to the merchant defendants

because they made no affirmations of fact or promises.

Defendants' first two arguments are substantively identical to their previously rejected

arguments regarding the complaint's fraud claims. The court has already found that plaintiffs

have not only identified actionable statements regarding the quality of the treats (such as those

claiming them to be "wholesome" and "nutritious"), but that plaintiffs also alleged that they

24

relied on these statements. Defendants' motion to dismiss plaintiffs' express warranty claims against all defendants in Count II is therefore denied.

Defendants are correct, however, that plaintiffs have failed to show that the merchant defendants made any actionable representations. Therefore, defendants' motion to dismiss plaintiffs' express warranty claims in Count II against the merchant defendants is granted.

**H. Unjust Enrichment Claims**

Defendants argue that plaintiffs' unjust enrichment claim (Count V) should be dismissed for several reasons. First, they argue that plaintiffs fail to allege that defendants' retention of any alleged benefit would be unjust, inequitable, or unconscionable. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 679 (Ill. 1989). Plaintiffs have alleged facts sufficient to plausibly suggest the existence of a defect in defendants' chicken jerky treats. Plaintiffs also allege that they paid valuable consideration for these "toxic" treats which harmed their dogs. Thus, plaintiffs have adequately alleged a claim for unjust enrichment.

Defendants also argue that plaintiffs cannot plead an unjust enrichment claim when an adequate remedy at law is available. Even though Fed.R.Civ.P. 8 permits pleading in the alternative, defendants claim that dismissal is warranted where an unjust enrichment claim is "merely duplicative of statutory or tort claims." In re Apple & AT&T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011). In Apple, the court was applying California law, which does not recognize a separate cause of action for unjust enrichment. Apple's

reasoning does not apply in other states, such as Illinois, where "[u]njust enrichment…is a legal claim." In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig., 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006).

Alternatively, defendants argue that the claims of plaintiffs Farkas, Safranek, and Pierpont against Nestle Purina and Waggin' Train should be dismissed because New Jersey, Ohio, and Pennsylvania require privity. See Arlandson, 792 F. Supp. 2d at 710; In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 684 F. Supp. 2d 942, 952-53 (N.D. Ohio 2009); Stutzle v. Rhone-Poulenc S.A., 2003 WL 22250424 at *1 (Pa. Ct. Com. Pl. 2003). They also argue that the claims of plaintiffs Ellis, Ely, Johnson, and Cowan should be dismissed because neither California nor Texas recognizes a cause of action for unjust enrichment. See Williamson v. Reinalt-Thomas Corp., 2012 WL 1438812, at *5 (N.D. Cal. 2012); Oxford v. Williams Cos., Inc., 137 F. Supp. 2d 756, 762 (E.D. Tex. 2001). Finally, they assert that the claim of plaintiff Holbrook should be dismissed because she received the treat only as a sample, and thus conferred no benefit on defendant. See Southeast Fla. Laborers Dist. Health & Welfare Trust Fund v. Philip Morris, 1998 WL 186878, at *4 (S.D. Fla. 1998).

Plaintiffs do not respond directly to these arguments, but instead reassert that a choice-of-law analysis would be premature at this stage of the litigation. Because this argument has already been rejected, defendants' motion to dismiss the unjust enrichment claims (Count V) of plaintiffs Ellis, Ely, Johnson, Cowan, and Holbrook against all defendants, and the claims of Farkas, Safranek, Pierpont against Waggin' Train and Nestle Purina, are granted. With respect to the other plaintiffs, the motion to dismiss the unjust enrichment claims is denied.

26

**I. <u>Strict Liability Claims against Merchant Defendants</u>**

Defendants argue that all strict liability claims (Counts VII and VIII) against the merchant defendants be dismissed because plaintiffs fail to allege sufficient facts to hold them, as mere sellers of the chicken jerky treats, liable under strict products liability. They note that several jurisdictions, including Ohio, Tennessee, Texas, and Washington, have enacted statutes that protect innocent sellers from strict liability. Even in jurisdictions without specific statutory protections, moreover, courts have found that non-manufacturing sellers are not liable for merely selling an allegedly defective product. <u>See</u> <u>Bravo v. C.H. Teibout & Sons, Inc.</u>, 243 NY.S.2d 335, 338 (N.Y. Sup. Ct. 1963) ("Where a vendor buys from a reputable source of supply, he has reasonable grounds for believing that the product which he purchases is free from defects, and he therefore has no duty to inspect same.").

Plaintiffs respond that these sellers are not "innocent" because they were warned about the dangers these treats caused yet continued to sell them. However, as noted above, mere service of process in this case says nothing about their knowledge at the time of plaintiffs' purchases. Because plaintiffs do not allege facts sufficient to plausibly suggest that the merchant defendants knew that the treats were defective, defendants' motion to dismiss plaintiffs' claims strict liability claims (Counts VII and VIII) against the merchant defendants is granted.

**<u>CONCLUSION</u>**

For the reasons stated above, defendant BJ's motion to dismiss for lack of personal jurisdiction (Doc. 100) is granted and plaintiffs' request for jurisdictional discovery is denied. Defendants' motion to dismiss for failure to state a claim (Doc. 102) is granted in part and denied in part:

- Defendants' motion to dismiss all claims of Connecticut plaintiffs Mawaka, Scheer, and Deschamps, all claims of Louisiana plaintiff Malone against Nestle Purina and Waggin' Train, all claims by New Jersey plaintiffs Farkas and Pierre except for breach of warranty in Count II, all claims by Ohio plaintiff Safranek except Counts II and V; all claims by Tennessee plaintiff Parker; and all claims by Washington plaintiff Higginbotham except for Counts II-IV, is granted without prejudice.

- Defendants' motion to dismiss all plaintiffs' consumer protection act, express warranty, and strict liability claims against the merchant defendants (Counts II-III and VII-VIII) is granted without prejudice.

- Defendants' motion to dismiss the unjust enrichment claims (Count V) of plaintiffs Farkas, Safranek, Pierpont, Ellis, Ely, Johnson, Cowan, and Holbrook is granted.

- Defendants' motion to dismiss plaintiffs' CLRA claim in Count III is granted without prejudice.

- All of defendants' other motions are denied.

Plaintiffs are directed to file an amended complaint conforming to this opinion on or before October 21, 2013; the remaining defendants shall respond thereto on or before November 11, 2013. The parties are directed to meet and confer and submit a joint status report

using this court's form on or before November 14, 2013. This matter is set for a status hearing

on November 20, 2013, at 9:00 a.m.


**ENTER:**      **September 27, 2013**

_____
**Robert W. Gettleman**
**United States District Judge**