<u>**Exhibit A**</u>

**AMENDED STIPULATION OF CLASS ACTION SETTLEMENT**

Subject to approval of the United States District Court for the Northern District of

Illinois, the Class Representatives,[1] for themselves and on behalf of the Settlement Class, and

Nestlé Purina PetCare Company ("Nestlé Purina") and Waggin' Train, LLC ("Waggin' Train")

(collectively, "Nestlé Purina" or "Defendants") (collectively, "Parties") hereby enter into this

stipulation of class action settlement ("the Agreement"), which supercedes the Stipulation of

Class Action Settlement entered into by the Parties on May 28, 2014, as follows:

**RECITALS**

WHEREAS, the U.S. Food and Drug Administration ("FDA") has issued various

advisories warning of a possible association between pet illnesses and deaths and the

consumption of certain varieties of jerky dog treat products imported from China;

WHEREAS, the Class Representatives have brought putative class actions, three (3) of

which are pending in United States District Court for the Northern District of Illinois before the

Honorable Robert W. Gettleman, asserting various claims against Defendants based on the Class

Representatives' purchase and/or their pets' consumption of the Dog Treat Products, including

that Defendants are strictly liable for alleged damages as a result of alleged defects in the dog

treats, breach of warranties, negligence, unjust enrichment, violation of consumer protection and

unfair competition statutes, violation of the federal RICO Act, and other claims and legal

theories;

WHEREAS, "Waggin' Train" and "Canyon Creek Ranch" brand jerky and other dog

treat products were sold in the United States until they were voluntarily withdrawn from the

marketplace on January 9, 2013;

WHEREAS, Nestlé Purina has in place an ongoing refund program through which

---

[1] All capitalized terms used herein shall have the meaning set out in Section I.

consumers wishing to obtain reimbursement for their purchase of the "Dog Treat Products" (defined in Section I.R below) can still seek such a refund and has also provided reimbursement to some consumers for certain purchase, injury, death or screening expenses associated with a pet's consumption of Dog Treat Products;

WHEREAS, the Class Representatives claim they sustained damages and other injuries as a result of Defendants' actions, and seek damages and compensation, including the cost of purchasing the Dog Treat Products, veterinary expenses, expenses related to the death of their pets, statutory damages under consumer protection and unfair competition statutes, noneconomic damages, diagnostic screening, and punitive damages;

WHEREAS, Defendants deny any and all allegations of unlawful or improper conduct, damages, or other injuries;

WHEREAS, in reaching this Agreement, the Parties have engaged in extensive, arms-length negotiations and mediated over the course of nine months under the auspices of the Honorable Morton Denlow (Ret.) of JAMS;

WHEREAS, the Class Representatives and Class Counsel have investigated the facts and law relating to the allegations in their respective complaints and conducted discovery as part of mediation into the claims and defenses alleged in the Actions, including Class Counsels' review of documents and retention of consulting experts;

WHEREAS, the confirmatory discovery the Parties conducted as part of mediation has included the exchange of documents and information regarding, among other things, the number of complaints uncovered by Class Counsel; contacts and/or complaints received by Defendants and the FDA from consumers regarding the Dog Treat Products; the number of Dog Treat Products sold by Defendants during the relevant time period; the amounts of economic damages

allegedly suffered by consumers as a result of their purchases and use of the Dog Treat Products; and the measures taken by Nestlé Purina for quality assurance and control;

WHEREAS, the Parties recognize that the outcome of their claims and defenses in the Actions is uncertain, and that a final resolution through the lawsuits would require several years of protracted adversarial litigation and appeals; substantial risk and expense; the distraction and diversion of the Parties' time and resources; and the expense of any possible future litigation raising similar or duplicative claims;

WHEREAS, the Class Representatives believe that their claims in the Actions have substantial merit;

WHEREAS, after taking into account the risks and uncertainties associated with protracted litigation and appeals, as well as the fair, efficient, and assured method of resolving the claims of the Settlement Class, Plaintiffs' Counsel and the Class Representatives have concluded, after substantial inquiry and investigation of the facts and confirmatory discovery conducted as part of mediation, that the settlement is fair, reasonable, adequate and in the best interests of the Settlement Class;

WHEREAS, Defendants deny any wrongdoing or liability, or that Plaintiffs' claims have merit, but have concluded that they will enter into this Agreement, among other reasons, in order to avoid the further expense, inconvenience, burden, distractions, uncertainty, and risk of litigation and any other present or future litigation arising out of the facts that gave rise to the litigation in the Actions; and

WHEREAS, the Parties acknowledge and agree that the Parties' respective claims in and defenses to the Actions were made in good faith and in accordance with Rule 11 of the Federal Rules of Civil Procedure, and all comparable state and federal laws and rules of professional

responsibility, and the Parties will request that the Court enter a Final Approval Order and Judgment that reflects that the Parties and their respective counsel have conducted themselves in good faith throughout the litigation.

NOW, THEREFORE, without (a) any admission or concession on the part of the Plaintiffs of the lack of merit of the Actions whatsoever, or (b) any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by any of the Defendants, it is hereby stipulated and agreed by the undersigned, on behalf of Plaintiffs and the Settlement Class, and the Defendants, that all Claims be settled, compromised, released, and dismissed on the merits and with prejudice, subject to the Court's approval as required by Rule 23 of the Federal Rules of Civil Procedure on the following terms and conditions:

## I.      DEFINITIONS

Under this Agreement, the following terms shall have the meanings set forth below:

A.      "Actions" means the following class actions: *Adkins, et al. v. Nestle Purina PetCare Company, et al.*, Case No. 1:12-cv-02871 (N.D. Ill.) (consolidated *with Mawaka v. Nestle Purina PetCare Company, et al*., Case No. 12-cv-880 (D. Conn.); *Ely v. Nestle Purina PetCare Company, et al.*, Case No. 12-cv-4785 (N.D. Cal.); and *Johnson v. Nestle Purina PetCare Company, et al.*, Case No. 12-cv-4774 (N.D. Cal.)); *Matin v. Nestle Purina PetCare Company, et al.*, Case No. 1:13-cv-01512 (N.D. Ill.); and *Gandara v. Nestle Purina PetCare Company, et al.*, Case No. 1:13-cv-04159 (N.D. Ill.).

B.      "Agreement" means this Stipulation of Class Action Settlement, inclusive of all exhibits, attachments and addendum hereto.

C.     "CAFA Notice" means the notice of this settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act, 28 U.S.C. §1715 and as further described in Section IV.E.5.

D.     "Claim" or "Claims" mean all claims, demands, actions, suits, causes of action, allegations of wrongdoing, and liabilities by a Settlement Class Member against a Released Entity in the Actions.

E.     "Claims Administrator" means Epiq Systems, Inc., which shall administer claims submitted by Settlement Class Members.

F.     "Claims Deadline" shall have the meaning assigned to it in Section VI.E of the Agreement.

G.     "Claim Form" means the form to be submitted by Settlement Class Members to the Claims Administrator substantially in the form of Exhibit 8, subject to Court approval, by the Claims Deadline.

H.     "Class Counsel" means Rachel L. Jensen and Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP; James O. Latturner and Thomas E. Soule of Edelman Combs Latturner & Goodwin LLC; Bruce E. Newman of Brown, Paindiris & Scott, LLP; and James M. Treglio of The Clark Law Firm, P.C.

I.     "Class Member" means a person or entity belonging to the Settlement Class.

J.     "Class Notice" means the forms of notice, substantially in the form attached hereto as Exhibits 4, 5, 6 agreed to by the Parties, or such other form as may be approved by the Court, which, *inter alia*, informs the Class Members of: (i) the certification of the Actions for settlement purposes; (ii) the dates and location of the Final Approval Hearing; (iii) the substantive terms of the Agreement; (iv) the process by which Class Members may Opt Out of

the Settlement Class or object to the Agreement; and (v) the process by which Settlement Class Members may claim a share of the Settlement Fund.

K.      "Class Representatives" means Dennis Adkins, Maria Higginbotham, Mary Ellis, Dwayne Holley, Kaiya Holley, Deborah Cowan, Barbara Pierpont, Cindi Farkas, Terry Safranek, Elizabeth Mawaka, Robin Pierre, Jill Holbrook, Mary Ellen Deschamps, Tracy Bagatta, Hal Scheer, S. Raymond Parker, Kristina Irving, Kathleen Malone, Jeannie Johnson, Rebel Ely, Rita DeSollar, Faris Matin, Rosalinda Gandara, and Felicita Morales.

L.      "Co-Lead Class Counsel" means Rachel L. Jensen and Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP; and James O. Latturner and Thomas E. Soule of Edelman Combs Latturner & Goodwin LLC.

M.      "Consumer Food Purchase Claims" means claims solely for reimbursement of the costs associated with the purchase of a Dog Treat Product by a Settlement Class Member who has not been reimbursed for such costs to date, including through return or exchange of a Dog Treat Product.  Consumer Food Purchase Claims do not include Injury Claims, Deceased Pet Claims, Healthy Screening Claims, or other claims for economic damage.

N.      "Court" means the United States District Court for the Northern District of Illinois, where the Actions are pending before the Honorable Robert W. Gettleman.

O.      "Deceased Pet Claims" means claims for damages by Settlement Class Members whose pets used or consumed a Dog Treat Product and allegedly died as a result.

P.      "Defendants" means Nestlé Purina PetCare Company and Waggin' Train, LLC.

Q.      "Defendants' Counsel" means Craig A. Hoover, E. Desmond Hogan, and Miranda L. Berge, of Hogan Lovells U.S. LLP.

R.      "Dog Treat Products" means any dog treat product imported from China, or dog treat product containing any ingredient imported from China, and sold or distributed under the "Waggin' Train" and "Canyon Creek Ranch" brand names, including the Dog Treat Products listed in Exhibit 2 to this Agreement.

S.      "Effective Date" shall mean either (1) if the Final Approval Order and Judgment is entered and no notice of appeal is filed, the next business day after the last date on which notice of appeal could have been timely filed from the entry of the Final Approval Order and Judgment, or (2) if the Final Approval Order and Judgment is entered and a notice of appeal is filed, the next business day after the Final Approval Order and Judgment is affirmed, all appeals are dismissed, and no further appeal to, or discretionary review in any court, remains.

T.      "Escrow Account" means the account controlled by the Escrow Agent.

U.      "Escrow Agent" means Robbins Geller Rudman & Dowd LLP or its successor(s).

V.      "Final Approval Hearing Date" shall mean the final approval hearing date set by the Court.

W.      "Final Approval Order and Judgment" means an order giving final approval to this Agreement, dismissing the Actions in line with its terms, approving the releases found in it, directing performance, and terminating the Actions.

X.      "Healthy Screening Claims" means claims for costs incurred by a Settlement Class Member whose pet used or consumed a Dog Treat Product, was tested because of use or consumption of that product, and received a finding that there were no health issues relating to use or consumption of the Dog Treat Product.

Y.      "Historic Payments" means those amounts already paid by Defendants in settlement or reimbursement of claims for certain purchase, injury, death or screening expenses

associated with a pet's consumption or use of Dog Treat Products, which Defendants represent to equal approximately $700,000 as of the date of this Agreement.

Z. "Injury Claims" means claims for damages incurred by Settlement Class Members whose pets used or consumed any Dog Treat Product and were treated for symptoms or injuries related to the use or consumption of that product, but which did not die.

AA. "Notice Date" shall be forty-five (45) days after entry of the Preliminary Approval Order, or on a date of the Court's choosing.

BB. "Notice Plan" refers to the plan for disseminating published and individual Class Notice, as specified in Exhibit 3.

CC. "Objection Date" means the date by which Class Members must file written notice of any objection or opposition to the Agreement or any part or provision thereof with the Court. Notice of such objection shall be served pursuant to Section IV.G of the Agreement.

DD. "Opt Out" means to request exclusion from the Settlement Class.

EE. "Opt-Out Deadline" means the deadline for the submission of Opt-Out requests to the Parties, as required pursuant to Section IV.F.5 of the Agreement.

FF. "Parties" shall mean the Plaintiffs and Defendants in the Actions.

GG. "Person" or "Persons" means all persons and entities, including without limitation, natural persons, firms, corporations, limited liability companies, joint ventures, joint stock companies, unincorporated organizations, agencies, bodies, associations, partnerships, limited liability partnerships, trusts, and their predecessors, successors, administrators, executors, heirs, and assigns.

HH. "Plaintiffs' Counsel" means the following law firms which are counsel for Plaintiffs in the Actions: Robbins Geller Rudman & Dowd LLP; Brown Paindiris & Scott LLP;

Edelman Combs Latturner & Goodwin LLC; Sydney Jay Hall, Esq.; The Clark Law Firm; The Terrell Law Group; and Thomas G. Morrissey, Ltd.

II.     "Preliminary Approval Order" means a Court order, substantially in the same form as Exhibit 1 hereto, preliminarily approving the Agreement, conditionally certifying the Settlement Class, and approving the Class Notice and Notice Plan.

JJ.     "Released Claims" is defined in Section V.A below.

KK.     "Released Entities" means Defendants and any and all entities and individuals that are alleged to have handled, distributed, purchased for resale and/or redistribution, supplied, manufactured and/or sold or offered for sale any Dog Treat Product, including but not limited to each of the retailers mentioned in any of the pleadings filed in the Actions (Wal-Mart Stores, Inc. dba Sam's Club; PetSmart, Inc.; Target Corporation; Costco Wholesale Corporation; CVS Caremark Corporation dba Caremark Advanced Technology Pharmacy, LLC and CVS Pharmacy, Inc.; Walgreen Company; Pet Supplies Plus of Connecticut XI, LLC; Rite Aid Corporation; BJ's Wholesale Club, Inc.; and Stater Bros. Markets, Inc.), as well as their respective insurers, parent companies, subsidiaries, affiliates, and all of their respective franchisees, and the officers, directors, trustees, shareholders, unit holders, partners, governors, managers, employees, agents, assignees, successors and heirs, members, and all individuals and entities subject to potential liability by or through the actions or inactions of any of the foregoing and all individuals or entities who, by or through their actions or inactions potentially subject any of the foregoing to liability any and all of them.  The inclusion of any entity that is not a Party to the Agreement in the foregoing list of Released Entities shall not constitute a waiver of any defenses any such entity has as to improper service or lack of personal jurisdiction.

LL.     "Releasing Parties" shall include all Settlement Class Members and their respective heirs, executors, agents, legal representatives, professional corporations, partnerships, assigns, and successors, but only to the extent such claims are derived by contract or operation of law from the Claims of Settlement Class Members.

MM.     "Settlement Class" means the class to be certified by the Court pursuant to this Agreement of all persons and entities who purchased, used or obtained, or whose pets used or consumed a Dog Treat Product.  The Settlement Class does not include Released Entities, as well as any judicial officer presiding over the Actions, or their immediate families.

NN.     "Settlement Class Member" is a person or entity fitting the definition of the Settlement Class and who has not validly and timely sought to Opt Out of the Settlement Class pursuant to Section IV.F.

OO.     "Settlement Fund" means a non-reversionary fund of $6,500,000.00 funded by the Defendants as full compensation for all Released Claims, the costs of claims notice and administration, attorneys' fees, Class Representative awards, costs, Taxes (as set forth in Section VI.D.3), and all expenses associated with this settlement, other than costs and expenses for notice pursuant to CAFA.  The Settlement Fund is in addition to the Historic Payments.

## II.     MONETARY BENEFITS, LIMITATIONS, AND CLAIMS PROCEDURES

Settlement Class Members have the ability to claim 100% of their reasonable economic damages incurred due to the illness or injury of their pets after the consumption of a Dog Treat Product out of the Settlement Fund as described below, so long as all accepted claims do not exceed the Settlement Fund available, in which case the Settlement Fund will be distributed on a *pro rata* basis.

Economic damages supported by documentation and accepted by the Claims Administrator as valid and reasonable shall be paid in full from the Settlement Fund, subject to available funds in the Settlement Fund. In addition, as provided below, the Claims Administrator has authority and discretion to pay Settlement Class Members up to $300 from the Settlement Fund for claims (or portions thereof) submitted without documentation, provided the Claims Administrator determines that the claims otherwise are valid and reasonable.

Economic damages subject to relief under this Settlement include, but are not limited to, (1) Healthy Screening Claims, (2) Injury Claims, (3) Deceased Pet Claims, and (4) Consumer Food Purchase Claims. Settlement Class Members may submit a claim for economic damages both supported by documentation and unsupported by documentation, and are eligible for payments in both categories for that single claim.

A.      Benefits Available In Each Category

1.      Injury Claims. A Settlement Class Member having submitted an Injury Claim deemed valid by the Claims Administrator shall receive a full or *pro rata* reimbursement of veterinary bills for all diagnostics (for example, blood testing or complete blood count, urinalysis, ultrasound or x-ray), examinations, procedures, medication, and treatments allegedly stemming from a pet's consumption of a Dog Treat Product, provided that reimbursement is only for the share of the veterinary bill related to such diagnostics and/or treatment, etc., and not for any other or unrelated portion of the veterinary bill.

2.      Deceased Pet Claims. A Settlement Class Member having submitted a Deceased Pet Claim deemed valid by the Claims Administrator shall receive: (i) the relief provided in sub-paragraph 1 above, (ii) reimbursement for a necropsy, euthanasia, cremation or burial/Specialty Services, and (iii) either the cost or fair market value of the deceased pet, whichever is higher, subject to the limits set forth above.

3. <u>Consumer Food Purchase Claims:</u>  A Settlement Class Member having submitted a Consumer Food Purchase Claim deemed valid by the Claims Administrator shall receive, in addition to all other economic damages, subject to the limits stated above, a full or *pro rata* reimbursement of the actual cost of purchase of Dog Treat Products so long as the Settlement Class Member has not been previously reimbursed for such costs, including through the return or exchange of a Dog Treat Product.

4. <u>Healthy Screening Claims:</u>  A Settlement Class Member having submitted a Healthy Screening Claim deemed valid by the Claims Administrator shall receive a full or *pro rata* reimbursement of the actual cost of visit(s) to a veterinarian, and any reasonable or necessary test(s) performed by or upon the recommendation or referral of the veterinarian to screen for illness from the use or consumption of a Dog Treat Product, provided that reimbursement will <u>only</u> be granted for the share of the veterinary bill, costs, tests, or examination that relate to the determination of whether the animal suffered injury from the use or consumption of a Dog Treat Product, and not for any other or unrelated portion of the veterinary bill.

B.  <u>Claims Procedures Applicable to All Claims</u>

All Settlement Class Members shall be bound by the claims procedures set forth below.

1. <u>Submission of Claim Form:</u>  The Settlement Class Member shall sign and submit to the Claims Administrator a completed Claim Form, in the form of Exhibit 8 hereto, together with all other documentation, if any, set forth below, by regular First Class mail, fax, electronic mail, or via the settlement website.

2. <u>Information Regarding Consumer Food Purchase Claims:</u>  The Settlement Class Member will be asked to provide sufficient information about the purchase or use of a Dog

Treat Product to satisfy the Claims Administrator that he/she did in fact purchase or otherwise receive or that his or her pet consumed or used a Dog Treat Product. Acceptable forms of proof include, but are not limited to: (1) receipt; (2) cancelled check; (3) credit card or bank statement; (4) copies of the product labels from the Dog Treat Product(s); and (5) a signed statement under penalty of perjury.

        3.      <u>Information Regarding Healthy Screening Costs:</u> The Settlement Class Member asserting a Healthy Screening Claim as a documented claim shall provide documentation showing costs incurred for screening the pet for illness after the use or consumption of a Dog Treat Product. Acceptable forms of proof of the amount of veterinary costs incurred include, but are not limited to: (1) veterinarian bill; (2) cancelled check; (3) receipt; (4) credit card or bank statement; and/or (5) statement from the veterinarian, hospital or clinic. The Settlement Class Member asserting an undocumented Healthy Screening Claim is to provide information as requested on the Claim Form which will be considered by the Claims Administrator as set forth in this Agreement.

        4.      <u>Information Regarding Veterinary Treatment:</u> The Settlement Class Member asserting an Injury Claim as a documented claim shall provide documentation showing treatment of the pet related to the use or consumption of a Dog Treat Product, and the Claims Administrator has the authority and discretion to make a determination of the claim from the documentation submitted. Acceptable forms of documentation of the veterinary treatment incurred include, but are not limited to: (1) veterinary notes; (2) veterinary records; (3) test or laboratory reports; (4) a statement from the veterinarian, hospital or clinic; and/or (5) credit card or bank statement. The Settlement Class Member asserting an undocumented Injury Claim is to

provide information as requested on the Claim Form which will be considered by the Claims Administrator as set forth in this Agreement.

5.     Information Regarding Necropsy, Euthanasia, Cremation, and Burial/Specialty Services:  The Settlement Class Member asserting a Deceased Pet Claim as a documented claim and seeking reimbursement for necropsy, euthanasia, burial, cremation or a combination thereof ("Specialty Services") shall provide a copy of the bill, receipt or records for the costs incurred for necropsy, euthanasia, cremation or burial/Specialty Services, if any. Acceptable forms of proof of necropsy, euthanasia, cremation or burial/Specialty Services costs incurred include, but are not limited to: (1) veterinarian bill; (2) cancelled check; (3) receipt; (4) credit card or bank statement; (5) statement from the veterinarian, hospital or clinic; and/or (6) statement, bill or invoice from a pet cemetery.  The Settlement Class Member asserting an undocumented Deceased Pet Claim is to provide information as requested on the Claim Form which will be considered by the Claims Administrator as set forth in this Agreement.

6.     Authorization for Claims Administrator to Obtain Information:  When death of an animal, veterinarian's bills or invoices, bills or invoices for testing, medicines or special treatments are claimed, a Settlement Class Member shall, if asked to do so by the Claims Administrator, timely provide authorization for the Claims Administrator to obtain copies of any documents or records directly from a care provider or other source, and when feasible, also shall timely provide true copies of relevant requested records if in his or her possession.  At the Claims Administrator's specific request, in the event there is a question as to the value of the animal and breeder records, and AKC records or records of similar organizations could help the Claims Administrator determine the value of a pet, a Settlement Class Member shall also be asked to timely provide authorization for the Claims Administrator to obtain copies of any such

relevant documents. Whether to ask for such documentation is to be in the Claims

Administrator's sole discretion.

       7.    <u>Claim Forms Submitted Without Documentation:</u>  To the extent that a

Settlement Class Member fails to submit information, documentation and/or authorizations

described in sub-paragraphs (1)-(6) above with his or her Claim Form, the Claims Administrator

may evaluate the information provided by the Settlement Class Member and make a reasonable

and good faith determination of the validity of the claim of the undocumented economic

damages reasonably incurred by the Settlement Class Member. If the Claims Administrator

determines the Claim is valid, payment to that Settlement Class Member on account of any and

all undocumented economic damages shall be limited to a total maximum payment of $300 per

Claim Form submitted; provided, however, that a Settlement Class Member may not recover

more than once for the same claim for economic damages. The Settlement Class Member shall

be entitled to documented economic damages as specified herein that the Claims Administrator

determines were reasonably incurred as a result of use or consumption of a Dog Treat Product,

subject to the limitations herein.

       8.    <u>Verification:</u>  The Settlement Class Member shall sign the verification on

the Claim Form that states as follows:

> I declare under the penalty of perjury that the above information is
> true and correct to the best of my knowledge. I understand that the
> above information will be reviewed and will be verified by a
> representative from the Claims Administrator. I hereby authorize a
> representative from the Claims Administrator to contact me or my
> veterinarian, or both, for more information.

C.    <u>Notification to Claimants</u>

The Claims Administrator shall notify a Settlement Class Member within forty-five (45)

days of receiving the Claim Form and all necessary information, or as soon thereafter as

reasonably practicable, as to whether the Claim will be accepted and paid pursuant to the terms of this Agreement or rejected.

        D.    <u>Limitations on Certain Types of Payments from the Settlement Fund</u>

There are limitations on amounts available from the Settlement Fund to pay certain types of damages. These limitations are as follows:

        1.    <u>Healthy Screening Claims:</u>  Payments from the Settlement Fund for Healthy Screening Claims shall be limited to an aggregate maximum of $100,000. To the extent that the total payments to all Settlement Class Members with eligible Healthy Screening Claims is less than the above amount, the balance is to be paid to Injury and Deceased Pet Claims.

        2.    <u>Consumer Food Purchase Claims:</u>  Payments from the Settlement Fund for Consumer Food Purchase Claims shall be limited to an aggregate maximum of $700,000. To the extent that the total payments to all Settlement Class Members with eligible Consumer Food Purchase Claims is less than the above amount, the balance is to be paid to Injury and Deceased Pet Claims.

        3.    <u>Claims Without Documentation:</u>  As provided above, payment from the Settlement Fund for Claims of economic damages for which there is no documentation accompanying a Claim Form shall be limited to a maximum payment of up to $300 per claim (or portion of a claim not supported by documentation) submitted by a Settlement Class Member. However, if total claims without documentation exceed the amount available in the Settlement Fund, claims submitted without documentation will be reduced *pro rata* up to 75% before any *pro rata* reduction is made to the claims supported by documentation.

E.    Pro Rata Payments from the Settlement Fund

To the extent that any of the amounts available to pay Healthy Screening Claims, Injury Claims, Deceased Pet Claims, Consumer Food Purchase Claims or property damage claims would be exhausted by payment of 100% of the claims made in that category, only after reducing *pro rata* the claims made by Settlement Class Members without supporting documentation, distribution to pet owners will be adjusted and paid on a *pro rata* basis.

F.    Balance of Settlement Funds after Payment of Claims

At such time as all valid Claims properly payable pursuant to the provisions of this Agreement are paid in full from the Settlement Fund by the Claims Administrator, if there is any balance remaining in the Settlement Fund after 180 days after the last check is issued, the Claims Administrator shall, if feasible, distribute such balance by way of *pro rata* payments to Settlement Class Members who submitted valid claims and who cashed their checks in an equitable and economical fashion.  Thereafter, if any balance remains, the Claims Administrator shall remit that balance in equal amounts to the following charitable or non-profit organizations: UC Davis School of Veterinary Medicine and North Shore Animal League.  In no event shall any balance revert to Defendants.  No Settlement Class Member shall have any claim of any kind against the Settlement Fund, the Parties or their respective counsel, or the Claims Administrator for distributions of the net Settlement Fund consistent with this paragraph.

## III.    QUALITY CONTROL, ASSURANCE, AND COMMUNICATION

In addition to the monetary relief to Settlement Class Members specified above, Nestlé Purina and Waggin' Train agree to undertake the following actions for a period of two years following the date of Preliminary Approval of the Agreement by the Court:

(1) The chicken[2] used as an ingredient in any Dog Treat Product shall be obtained from a single-source supplier. Waggin' Train and Nestlé Purina will require their single-source supplier to comply with Quality Assurance and Quality Control ("QA/QC") industry leading practices for dog treats, which include controls on the feeding, raising, and processing of the chicken used in the Dog Treat Products that are sufficient to ensure compliance with United States Food and Drug Administration animal feed standards. In particular, as part of these QA/QC practices, Waggin' Train and Nestlé Purina will require their single source supplier to source all of the chicken used in Dog Treat Products by growing them from eggs, controlling their feed and medications given to them, and controlling their processing.

(2) As part of these industry leading QA/QC practices, Waggin' Train and Nestlé Purina shall be able to trace back all ingredients that go into the manufacture of their Dog Treat Products.

(3) Waggin' Train and Nestlé Purina personnel will routinely audit and inspect the operations of the single-source supplier of chicken for the Dog Treat Products to ensure that all QA/QC standards are being met. Those audits will include on-site inspections of the single-source supplier operations no less than on an annual basis by employees of Waggin' Train and/or Nestlé Purina. In addition, between annual audits Waggin' Train and/or Nestlé Purina employees shall routinely monitor and periodically visit the chicken supplier's operations. If, through an annual audit or periodic inspection of the supplier, Waggin' Train and Nestlé Purina determine that Dog Treat Products are not in compliance with FDA animal feed standards, it will not distribute such Dog Treat Products for sale in the United States.

(4) Waggin' Train and Nestlé Purina management will require the manufacturer of the Dog Treat Products to comply with industry leading QA/QC practices and will audit and inspect their manufacturing operations no less than on an annual basis. In addition, between annual audits Waggin' Train and/or Nestlé Purina employees shall routinely monitor and visit the Dog Treat Products manufacturing operations. If, through an annual audit or periodic inspection of the manufacturer, Waggin' Train and Nestlé Purina determine that Dog Treat Products are not in compliance with FDA animal feed standards, such Dog Treat Products will not be distributed for sale in the United States.

(5) Waggin' Train and Nestlé Purina will test, using FDA-approved testing protocols, prior to releasing for sale each batch of Dog Treat Products for protein, moisture, salmonella, melamine, specific antibiotics (sulfaclozine, tilmicosin, trimethoprim, enrofloxacin, sulfamethoxazole, sulfaquinoxaline), di-ethylene glycol ("DEG"), and enterobacteriaceae ("EB"). In addition, Waggin' Train and Nestlé Purina will

---

[2]     As of the date of the execution of this Stipulation of Settlement, Waggin' Train and Nestlé Purina are not making and have no plans to re-introduce any Chinese-made poultry dog treat products other than those made with chicken. In the event Waggin' Train or Nestlé Purina begin production of poultry Dog Treat Products other than chicken (*e.g.*, duck) during the period the QA/QC practices agreed to herein are in place, the reasonably similar QA/QC practices shall apply to the new poultry Dog Treat Products for the remaining term of the agreed to QA/QC practices.

conduct periodic finished product testing of the Dog Treat Products for: heavy metals (*e.g.*, cadmium, lead, mercury, arsenic, cromium), additional melamine and its related compounds, additional antibiotic screens (45+ antibiotics), pesticide screens (190+ pesticides), and authenticity ("DNA") verification for animal protein and PCB's. If Waggin' Train and Nestlé Purina determine that Dog Treat Products fail to comply with their testing standards, such Dog Treat Products will not be distributed for sale in the United States.

(6) Waggin' Train and/or Nestlé Purina will provide a clear and conspicuous statement, including by increasing the font size, on all new Dog Treat Products packaging indicating the country of origin (*i.e.*, "Product of China").

(7) FAQs related to Waggin' Train and Canyon Creek Ranch Dog Treat Products will be displayed on the Waggin' Train and/or Canyon Creek Ranch websites, as applicable. These FAQs will provide information regarding the non-proprietary QA/QC programs related to the Dog Treat Products and will also provide a clear and conspicuous statement on the country of origin on the Dog Treat Products and shall also disclose the dates on which the last annual audits of the single source supplier and the manufacturer were completed. The FAQs will also provide periodic updates on the status of the FDA investigation into chicken jerky treats made in China.

## IV.   COURT APPROVAL, CLASS NOTICE, OBJECTION PROCEDURES

A.   <u>Reasonable Efforts</u>

Class Counsel and Defendants' Counsel will use their reasonable efforts to (i) recommend and obtain approval of this Agreement by the Court under Federal Rule of Civil Procedure 23; (ii) carry out the terms of this Agreement; (iii) support this Agreement in all public statements; (iv) assist with providing Class Notice as appropriate; and (v) if the settlement is approved, secure the prompt, complete, and final dismissal with prejudice of the Actions against the Released Entities. Class Counsel shall, consistent with their obligations to their clients and the Class, make every reasonable effort to encourage Settlement Class Members to participate in this settlement.

The Parties and Plaintiffs' Counsel agree that Defendants may communicate with Settlement Class Members regarding the provisions of this Agreement, so long as such communications are not inconsistent with the Class Notice, or other agreed upon

communications concerning the Agreement. The Released Entities may refer Settlement Class Members to the Claims Administrator (and phone numbers and websites maintained by the Claims Administrator). Defendants will not discourage the filing of any claims allowed under this Agreement. Released Entities that have been reimbursing Settlement Class Members may continue to do so if necessary to complete claims, and Released Entities also may encourage those persons to participate in the class settlement that is the subject of this Agreement.

B.      Motion for Preliminary Approval

1.      As soon as reasonably practicable after the execution of this Agreement, the Parties shall file in the Court a Motion for Preliminary Approval that seeks entry of a proposed Preliminary Approval Order (substantially in the form attached hereto as Exhibit 1) that would, for settlement purposes only:

(a)      preliminarily approve this Agreement pursuant to Federal Rule of Civil Procedure 23(e);

(b)      conditionally certify a Settlement Class under Federal Rules of Civil Procedure 23(a) and (b)(3) to be comprised of the Settlement Class Members;

(c)      appoint the Class Representatives to represent the Settlement Class, and appoint Class Counsel, pursuant to Federal Rule of Civil Procedure 23(g);

(d)      approve the proposed Notice Plan, Class Notice and CAFA Notice in the forms substantially similar to Exhibits 3, 4, 5, 6, and 7;

(e)      appoint the Claims Administrator;

(f)      set the Claims Deadline, Opt-Out Deadline, and Objection Deadlines;

(g)     approve the Claim Form in a form substantially similar to Exhibit 8;

(h)     set a briefing schedule for final approval; and

(i)     set the date and time of the Final Approval Hearing.

C.     <u>Stays</u>

1.     <u>Suspension of Discovery</u>:  Until the Preliminary Approval Order is entered by the Court, including the entry of the stay of discovery in the form contained therein, the Defendants, Releasing Parties, and Plaintiffs' Counsel agree to not pursue discovery, and shall not in any way subsequently argue that another Party has failed to comply with suspended discovery obligations because of the suspension of discovery efforts following the Execution Date.

2.     The Defendants shall be allowed to continue executing the sampling plan pursuant to the Court's Order dated September 10, 2013.

3.     The Parties shall meet and confer before filing any motion.

4.     <u>Stay of Litigation</u>:  The Parties will jointly move for a stay of the Actions, except any matters necessary to implement, advance, or further the Agreement.

5.     <u>Stay of Local and State Court Actions in the United States</u>:  The proposed Preliminary Approval Order filed in the Court shall bar and enjoin all Class Members from commencing or prosecuting any action asserting any Released Claims, and shall stay any actions or proceedings brought by any member of the Settlement Class asserting any Released Claims as of three (3) days after the date the Preliminary Approval Order is entered by the Court.  In the event the Final Approval Order and Judgment is not entered or is reversed for any reason, or this Agreement terminates for any reason, the Parties and Released Entities shall not be deemed to

have waived any rights with respect to proceedings in the litigation of such actions that arise during the period of the stay and shall have a full and fair opportunity to present any position in any such proceedings.

        D.      Certification of Settlement Class

        1.      Class Definition:  For purposes of settlement only, and upon the express terms and conditions set forth in this Agreement, Plaintiffs will seek certification of the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).

        2.      Class Certified for Settlement Purposes Only:  Nothing in this Agreement shall be construed as an admission by the Released Entities that the Actions are or any similar case is amenable to class certification for trial purposes or any purposes other than for implementation of the terms of this Agreement.  Furthermore, nothing in this Agreement shall prevent Defendants from opposing class certification or seeking de-certification of the certified Settlement Class if the Court does not grant Final Approval of this Agreement, or Final Approval is not upheld on appeal for any reason.  The certification of the Settlement Class shall not be treated as the adjudication of any fact or issue for any purpose other than this Agreement and shall not be considered as law of the case, res judicata, or collateral estoppel in any other proceeding, until the Agreement reaches the Effective Date.

        E.      Notice

        1.      Form of Class Notice:  Subject to approval of the Court, Class Notice shall be made in accordance with the Notice Plan as set forth in Exhibit 3.

2.      Dissemination of Notice:

(a)      Notice Dates:  Subject to approval by the Court, the process for disseminating Class Notice shall commence no later than forty-five (45) days of the entry of the Preliminary Approval Order by the Court (the "Notice Date").

(b)      Notice Plan:  Individual-mailed notices, a settlement website, notice on the websites of Plaintiffs' Counsel, Waggin' Train, and Canyon Creek Ranch, press releases by Class Counsel, and published notice in print and digital media shall be disseminated in accordance with the Notice Plan attached as Exhibit 3.

3.      Cost of Notice:  Costs of the Class Notice shall be paid from the Settlement Fund.  However, any costs associated with Defendants' or Plaintiffs' Counsel's websites, any postings on those websites related to the settlement, any separate communications or advertisements by any Plaintiff or Plaintiffs' Counsel, and any press release notice shall be paid by the respective Party.

4.      Claims Administrator to Effect Notice:  The Claims Administrator shall distribute the Class Notice pursuant to the Notice Plan approved by the Court.  As part of Plaintiffs' motion for final approval to be filed on or before April 24, 2015, the Claims Administator shall submit a certification to the Court that notice has been provided, and that the Claims Administrator mailed and published the Class Notice pursuant to the approved Notice Plan, the dates that Class Notice was mailed out and published by each source, and provide a true copy of each Class Notice in each publication, and provide any other information relevant to the publication and mailing of the Class Notice.

5.      CAFA Notice:  Defendants shall serve notice of this Agreement (via Federal Express) in accordance with the Class Action Fairness Act, 28 U.S.C. §1715, not later

than ten (10) days after the filing of this Agreement with the Court. A proposed form of the CAFA Notice, without the accompanying attachments, is attached hereto as Exhibit 7.

      F.     <u>Voluntary Exclusion of Settlement Class Members from Settlement Class</u>

      1.     <u>Opt Out Rights:</u> Settlement Class Members have the right to individually Opt Out from this Agreement and from the Settlement Class by timely submitting a written request to Opt Out. Settlement Class Members who so timely request to Opt Out shall be excluded from this Agreement and from the Settlement Class. Any Settlement Class Member who does not timely submit a request to Opt Out, or does not otherwise comply with the agreed upon Opt Out procedure approved by the Court, shall be bound by the terms of this Agreement and the Final Approval Order and Judgment. Any Settlement Class Member who does not Opt Out of this Agreement shall be deemed to have taken all actions necessary to withdraw and revoke the assignment to any Person of any claim against the Released Entities.

      2.     <u>Conditions for Opt-Out Requests:</u> Opt-Out requests cannot be submitted on behalf of a group of people by a representative(s). Nor may an Opt-Out request be accepted beyond the 60-day deadline. Any person submitting an invalid or untimely Opt-Out request shall be bound by the terms of this Agreement and the Final Approval Order and Judgment.

      3.     <u>Revocation of Opt-Out Requests:</u> Any Settlement Class Member who timely submits a request to Opt Out shall have until 7 (seven) days prior to the Final Approval Hearing Date to deliver to Co-Lead Class Counsel and the Claims Administrator a written revocation of such Settlement Class Member's request to Opt Out. Co-Lead Class Counsel shall timely apprise the Court of such revocations.

      4.     <u>List of Opt-Outs:</u> Within ten (10) days after the Opt-Out Deadline, the Claims Administrator shall furnish Defendants' Counsel and Co-Lead Class Counsel with a

complete list in machine-readable form of all Opt-Out requests submitted by the Opt-Out

Deadline and not timely revoked.

   5. <u>Deadline to Opt Out from Settlement Class</u>: All Settlement Class

Members must submit their Request to Opt Out no later than sixty (60) days after the Notice

Date (the "Opt-Out Deadline").

   6. <u>Request to Opt Out</u>: A Settlement Class Member must Opt Out of the

Settlement Class by notifying the Claims Administrator in writing postmarked on or before the

Opt-Out Deadline of his/her intention to exclude himself/herself from the Settlement Class. The

Settlement Class Member seeking to Opt Out must include his/her name, address, telephone, and

signature in his/her written request to Opt Out and otherwise comply with the agreed-upon Opt-

Out procedure approved by the Court. The initial determination that a request to Opt Out by a

Settlement Class Member complies with the Opt Out procedures in this Agreement will be made

by the Claims Administrator and is subject to final approval by the Court as part of the Final

Approval of the Agreement. The Court may disallow any request for exclusion that fails to

comply with the provisions of Preliminary Approval Order or the Opt-Out procedures otherwise

approved by the Court.

   7. <u>Defendants' Right to Terminate</u>: Defendants shall have the right (which

right must be exercised unanimously) to terminate the settlement set forth in this Agreement if

the number of Settlement Class Members who request to Opt Out of the Settlement Class

exceeds 250. Defendants shall be entitled to exercise their right to terminate this settlement

under this paragraph only if Defendants provide Class Counsel with written notice of their

exercise of their option to terminate and file that notice with the Court within fourteen (14)

business days from their receipt from the Claims Administrator of a complete list of all Opt-Out requests submitted by the Opt-Out Deadline and not timely revoked.

      G.    <u>Procedures for Objecting to the Settlement</u>:  Any objection to this Agreement, including any of its terms, must be served on Co-Lead Class Counsel and Defendants' Counsel as specified in Sections VII.M, and filed with the Court, in writing no later than thirty (30) days prior to the Final Approval Hearing Date, as set forth in the Class Notice (the "Objection Date"). In order to object, the Settlement Class Member must include in the objection submitted to Co-Lead Class Counsel and Defendants' Counsel, and filed with the Court: (a) the name, address, telephone number of the person objecting and, if represented by counsel, of his/her counsel; and (b) proof that the person is a Settlement Class Member (such as proof of purchase, proof of injury or death of pet, or sworn declaration under penalty of perjury).  An objecting Settlement Class Member must state, in writing, all facts relating to his or her objection, the basis for any such objections, and provide a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel.  Any Settlement Class Member who fails to submit and serve timely a written objection and notice of his or her intent to appear at the Final Approval Hearing as detailed in the Notice, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.  Any person or entity filing an objection shall, by doing so, submit himself, herself or itself to the exclusive jurisdiction and venue of the United States District Court for the Northern District of Illinois, and shall agree to be subject to discovery by the Parties with respect to the objection and any prior objections to class action settlements lodged by the objector.

H.      Motion for Final Approval Order and Entry of Final Judgment

1.      Hearing on Motion for Final Approval:  The motion for Final Approval of

this Agreement will be set for hearing by the Court as soon as is practical, but the Parties will

request that it be set one hundred sixty-five (165) days after entry of the Preliminary Approval

Order.  The Parties shall seek entry of a "Final Approval Order and Judgment" (in substantially

the same form as Exhibit 9 hereto) that, *inter alia*:

(a)      With respect to settlement of Released Claims, determines that the

Court has and shall retain exclusive jurisdiction over: (i) the Agreement, including its

administration, consummation, claim procedures, enforcement, and any other issues or questions

that may arise; (ii) the Parties and disputes for purposes of the Agreement; (iii) any applications

for attorneys' fees, expenses, costs, and Class Representative awards related to the Agreement;

and (iv) all proceedings related to this Agreement both before and after the Final Approval

becomes final and is no longer subject to appeal, and over enforcement of the Final Approval

Order and Judgment;

(b)      Approves finally this Agreement and its terms as being a fair,

reasonable, and adequate settlement as to the Settlement Class Members within the meaning of

Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act, and other

applicable law;

(c)      Determines that the Class Notice, as approved by the Preliminary

Approval Order, constitutes reasonable and the best practicable notice reasonably calculated

under the circumstances to apprise members of the Settlement Class of the pendency of the

Actions, the terms of the Agreement, the right to object or Opt Out, the right to appear at the

hearing on Final Approval, and the claims procedure, and determines that the Class Notice is

adequate and sufficient to all persons entitled to receive such notices, and meets the requirements of due process and other applicable rules or laws;

(d)     Determines that there is no just reason for delay and that the Final Approval Order and Judgment shall be final and entered;

(e)     Dismisses the Actions with prejudice as to all Settlement Class Members who did not submit a valid Opt-Out request, without prejudice as to all others, and without costs except as provided for in the Final Approval Order and Judgment or other order of the Court;

(f)     Directs the distribution of the Settlement Fund no later than ten (10) days after the Effective Date; and

(g)     Enters the Release and Injunction described herein in Sections V.A and V.D.

2.     <u>Motion to Void the Agreement:</u>  In the event that Defendants exercise their right to terminate the settlement on account of the number of Opt-Outs as set forth in Section IV.F.7, or in the event that the Court refuses to enter a Final Approval Order and Judgment substantially in the form set out herein and in accordance with the provisions of this Agreement, this Agreement shall, subject to an agreement by the Parties, be null and void and of no force or effect.  In that case, a Party may bring an appropriate motion to void the Agreement, set aside any related orders, including any order certifying a Settlement Class on the basis of the Agreement, and take whatever action they deem fit under the circumstances.

## V.     RELEASE OF CLAIMS BY CLASS MEMBERS

### A.     Release

Upon entry of the Final Approval Order and Judgment by the Court, the Releasing Parties forever release and discharge all Released Claims against all Defendants and all Released Entities.  For purposes of this Agreement, "Released Claims" are all claims, demands, actions, suits, and/or causes of action arising on or before the Effective Date that have been brought or could have been brought, are currently pending or were pending, or are ever brought in the future, by any Settlement Class Member against any Defendant or Released Entity, in any forum in the United States (including any forum in which a United States Court sits), whether known or unknown, suspected and unsuspected, ripe and contingent, asserted or unasserted, under or pursuant to any statute, regulation, common law or equity, that relate in any way, directly or indirectly, to products, facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in any claim raised or that could have been raised by any Settlement Class Member in the Actions.  For purposes of this Agreement, "Released Claims" do not include any personal injury claims arising from human consumption of the Dog Treat Products, or for any claims for breach of this Agreement, nor any claims, demands, actions, suits, or causes of action that have been brought, could have been brought, or are brought in the future by any Defendant or Released Entity against any other Defendant or Released Entity for indemnity.

### B.     Covenant Not to Sue

The Releasing Parties and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing or prosecution of any suit or proceeding in any forum against any Released Entity, or against any other person or entity who

may claim contribution or indemnity from or against any Released Entity, based upon or related to any Released Claim.

C.    Additional Mutual Releases

1.    Upon entry of the Final Approval Order and Judgment by the Court, each of the Released Entities shall be deemed to have fully, finally, and forever released, discharged, and extinguished all Plaintiffs, Plaintiffs' Counsel, and all members of the Settlement Class, and their respective present and former parents, subsidiaries, divisions, and affiliates, the present and former partners, employees, officers and directors of each of them, the present and former attorneys, accountants, experts, consultants, insurers, and agents, members, and all individuals and entities subject to potential liability by or through the actions or inactions of any of the foregoing and all individuals or entities who, by or through their actions or inactions potentially subject any of the foregoing to liability any and all of them, each of the foregoing solely in their capacity as such, and the ancestors, spouses, descendants, predecessors, successors, heirs, and assigns of each, from all claims based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Actions or the Released Claims; provided, however, that such release does not include claims for breach of this Agreement, nor does it include all claims, rights or causes of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of this Agreement or orders or judgments issued by the courts in connection with the Settlement.

2.    In addition to the Release provided in Section V.A, upon entry of the Final Approval Order and Judgment by the Court, each of the Releasing Entities shall be deemed to have fully, finally, and forever released, discharged, extinguished, Defendants and any entity formerly named as a defendant in the Actions, Defendants' Counsel, their respective present and

former parents, subsidiaries, divisions, and affiliates, the present and former partners, employees, officers and directors of each of them, the present and former attorneys, accountants, experts, consultants, insurers, and agents, members, and all individuals and entities subject to potential liability by or through the actions or inactions of any of the foregoing and all individuals or entities who, by or through their actions or inactions potentially subject any of the foregoing to liability any and all of them, each of the foregoing solely in their capacity as such, and the predecessors, successors, heirs, and assigns of each, from all claims based upon or arising out of the institution, prosecution, assertion, defense, settlement, and/or resolution of the Actions or the Released Claims; provided, however, that such release does not include claims for breach of this Agreement, nor does it include all claims, rights or causes of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of this Agreement or orders or judgments issued by the courts in connection with the Settlement.

D.    <u>Injunction</u>

It is an essential element of the Agreement that the Released Entities obtain the fullest possible release from further liability to anyone relating to the Released Claims, and it is the intention of the Parties to this Agreement that the Agreement eliminate all further risk and liability of the Released Entities relating to the Released Claims.  Accordingly, the Parties agree that the Court shall include in the Final Approval Order and Judgment an injunction that permanently enjoins the Releasing Parties from:

1.    Filing, commencing, prosecuting, continuing, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding or order in any jurisdiction based on any or

all Released Claims against one or more Released Entities or against any person or entity who may claim over against any Released Entity for contribution or indemnity;

2.　　　Instituting, continuing, maintaining, organizing class members in, or joining with class members in, intervening in, or receiving any benefits from any action or arbitration, including but not limited to, a purported class action, in any jurisdiction, against one or more Released Entities, or against any person or entity who may claim over against any Released Entity for contribution or indemnity, based on, involving, or incorporating, directly or indirectly, any or all Released Claims;

3.　　　Filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding, or order in any jurisdiction based on an allegation that an action taken by the Released Entities, which is in compliance with the provisions of the Agreement, violates any legal right of any Settlement Class Member; and

4.　　　Filing, commencing, prosecuting, continuing, maintaining, intervening in, participating in (as class representatives, members or otherwise), or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding or order in any jurisdiction based upon or related to any Released Claim against any person or entity who is, has been, could have been, or could be alleged to be a joint-tortfeasor, co-tortfeasor, co-conspirator, or co-obligor with any Released entity based upon or related to any Released Claim.

E.　　　<u>Dismissal With Prejudice</u>

The Releasing Parties shall take all steps necessary to dismiss the Actions with prejudice. It is the Parties' intention that such dismissal shall constitute a final judgment on the merits to

which the principles of *res judicata* shall apply to the fullest extent of the law as to the Released

Entities.

        F.      <u>Notice Related to Section 1542 of the California Civil Code</u>

All Parties to this Agreement specifically acknowledge that they have been informed by

their legal counsel of Section 1542 of the California Civil Code, and they expressly waive and

relinquish any rights or benefits available to them under this statute.  California Civil Code

§1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

Notwithstanding Section 1542 of the California Civil Code, or any other statute or rule of law of

similar effect, this Agreement shall be given full force and effect according to each and all of its

expressed terms and provisions, including those related to any unknown or unsuspected claims,

liabilities, demands, or causes of action which are based on, arise from or are in any way

connected with, the Actions.  All Parties to the Agreement, and each of them, acknowledge that

they may hereafter discover claims or facts in addition to or different from those which they now

know or believe to exist with respect to the subject matter of the releases that, if known or

suspected at the time of executing the releases, may have materially affected this settlement.

Nevertheless, all Parties to the Agreement waive any right, claim or cause of action that might

arise as a result of such different or additional claims or facts.  All Parties to the Agreement have

been advised specifically by their legal counsel of the effect of this waiver, and they expressly

acknowledge that they understand the significance and consequence of this expressed waiver of

California Civil Code §1542 or any other statute or rule of law of similar effect.

G.    <u>Irreparable Harm</u>

The Parties agree that the Released Entities shall suffer irreparable harm if a Releasing Party takes action inconsistent with Sections V.A, B and D, and in that event, a Released Entity may seek an injunction from the Court as to such action without further showing of irreparable harm.

H.    <u>Attorneys' Fees and Costs</u>

If any Releasing Party sues any Released Entity for any of the Released Claims, the sued Released Entity shall, in addition to any and all other remedies, recover his, her or its reasonable costs and attorneys' fees incurred in defending such suit and/or in seeking to enforce the injunctions in this Section and in the Court's Final Approval Order, provided that: (1) the Court determines that the action is brought by a Releasing Party against a Released Entity and asserts Released Claims; (2)  the sued Released Entities first give written notice via email or overnight mail (with delivery tracking available), along with a copy of this Settlement Agreement, the Court's signed Final Approval Order and Judgment, and the Long Form Notice,  notifying the suing Releasing Party or their counsel that he/she/it is suing for Released Claims, and give the Releasing Party fourteen (14) calendar days from the date of receipt within which to dismiss the Released Claims (the "Cure Period"); and (3) the Cure Period has lapsed.  Nothing in this section, however, shall prohibit a Releasing Party from seeking a dismissal and/or moving the Court to enforce the injunctions in its Preliminary Approval Order or Final Approval Orders before the lapse of the Cure Period.  In no event will a Released Entity be entitled to an award of attorneys' fees or costs from an unrepresented or pro se Releasing Party by force of and under this Section of the Agreement.

## VI.  ESTABLISHMENT AND ADMINISTRATION OF THE SETTLEMENT FUND

A.  <u>Establishment of the Settlement Fund</u>

Defendants will establish the Settlement Fund of Six Million Five Hundred Thousand Dollars ($6,500,000.00) in full compensation for all Released Claims, including costs of notice, administration, attorneys' fees, Class Representative awards, Taxes, costs, and expenses, which will accrue interest at the Federal Funds Rate from the date of Execution until the date of payment into the Escrow Account as provided herein.  The Settlement Fund is exclusive of the Historic Payments, which are without reversion to any Defendant or Released Entity.

B.  <u>Administration of the Settlement Fund</u>

1.  <u>Administration by the Claims Administrator:</u>  Claims against the Settlement Fund shall be administered by the Claims Administrator, who shall at all times act in good faith and make reasonable efforts to determine whether a Claim is valid and payable from the Settlement Fund in accordance with the provisions in this Agreement before making any payment from the Settlement Fund in satisfaction of that Claim.  The Claims Administrator shall have the discretion to review Claims with the objectives of efficiency and effecting substantial justice to the Parties and the Settlement Class Members.  The Claims Administrator shall have the right to contact Settlement Class Members to validate Claims.  The validity of a Claim will be assessed based on the totality of the Claim.  The inability of a Settlement Class Member to provide precise details about their purchase, screening, or treatment will not *per se* invalidate a Claim, but will be assessed with other factors for purposes of validation.

2.  <u>Authority of the Claims Administrator to Adjust Claims:</u>  Claims submitted by Settlement Class Members for reimbursement of economic damages are subject to a determination by the Claims Administrator that the amounts claimed are reasonable.  To make such a determination, the Claims Administrator may use whatever source it deems appropriate

35

to determine the reasonableness of the expenditures.  Although not determinative, depending on

the circumstances, the *Veterinary Fee Reference, Eighth Edition,* published by the American

Animal Hospital Association, may be of assistance to the Claims Administrator in making a

reasonableness determination of certain claimed expenses.   Notwithstanding the foregoing, the

Claims Administrator has complete and final authority to adjust Claims made as set forth in the

immediately preceding paragraph.  All decisions of the Claims Administrator shall be final,

binding, and not subject to appeal.  The costs of administration of the Settlement Fund,

including costs associated with Class Notice, will be paid out of the Settlement Fund.

   3.  Ability of Class Members to Contact the Claims Administrator:  The

Claims Administrator will have a toll-free telephone number and website that shall be activated

within seven (7) days of the Preliminary Approval of the Settlement, the costs of which will be

paid out of the Settlement Fund.  The Released Entities may refer potential Settlement Class

Members to the Claims Administrator, the toll-free number, and the website.

  C. <u>Confidentiality</u>:  The claims process administered by the Claims Administrator,

and Claims Forms and other documentation and information the Claims Administrator receives

from claimants, shall not be disclosed by the Claims Administrator to any other Settlement Class

Member.  The Claims Administrator will provide information to the Court, Class Counsel, and

Defendants' Counsel upon request.  The Claims Administrator also shall provide such reports

and such other information to the Court as it may require.  The Parties agree that information

provided by Settlement Class Members on Claim Forms shall be kept confidential, except as

otherwise provided herein, shall be used only for purposes of administering the Settlement or

communicating to Settlement Class Members by Class Counsel, and shall not be used for

marketing or any other commercial purposes.

D.     <u>Escrow of the Settlement Fund</u>

1.     <u>Payment of Settlement Fund</u>:  Defendants shall cause the amount of $6,500,000.00 to be transferred to an account controlled by the Escrow Agent within ten (10) business days after the later of (a) the order granting the motion for preliminary approval, or (b) the receipt by Defendants' Counsel of wire/check payee instructions and a Form W-9 providing the tax identification number for the Escrow Account.  These funds, together with any interest and income earned thereon once transferred, shall constitute the Settlement Fund.

2.     <u>The Escrow Agent</u>:  The Escrow Agent's authority over the Settlement Fund shall be limited to the following:

(a)     The Escrow Agent shall invest the Settlement Fund deposited pursuant to paragraph D.1 hereof in instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government, or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All costs and risks related to the investment of the Settlement Fund in accordance with the guidelines set forth in this paragraph shall be borne by the Settlement Fund.

(b)     The Escrow Agent shall not disburse the Settlement Fund, except (i) as provided in the Agreement, including without limitation if the Defendants invoke their right to terminate the Settlement as provided in Section VII.F, (ii) by an order of the Court, or (iii) with the written agreement of Co-Lead Counsel and Defendants' Counsel.

(c)     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Agreement and/or further order(s) of the Court.

(d)     Prior to the Effective Date, the Escrow Agent may pay notice and administration costs associated with the administration of the Settlement, including, without limitation: the cost of identifying and locating members of the Settlement Class, mailing Class Notice, publishing Class Notice, assisting with the filing of claims, processing Proof of Claim forms, and paying escrow fees and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims ("Class Notice and Administration Costs").

3.     Taxes:  The Parties agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)     For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  Co-Lead Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation §1.468B-2(k)).  Such returns shall be consistent with paragraph D.3 hereof and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the

Settlement Fund as provided in paragraph D.3(b) hereof.

(b)     All: (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of paragraph 3 hereof (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in paragraph D.3 hereof) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Entities and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  The Settlement Fund shall indemnify and hold each of the Released Entities and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)); neither the Released Entities nor their counsel are responsible nor shall they have any liability therefor.  The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to

carry out the provisions of paragraph D.3 hereof.

        4.      <u>Return of Money from Escrow Account:</u>  In the event the Agreement: (a) is not approved; (b) is terminated, canceled, or fails to become effective for any reason, including the reasons set forth in Section VII.F; or (c) is successfully collaterally attacked, the Settlement Fund (including accrued interest) less expenses actually incurred or due and owing for Class Notice and Administration Costs, Taxes or Tax Expenses pursuant to paragraphs D.2 or 3 hereof, shall be refunded to Nestlé Purina within three (3) business days pursuant to written instructions from Defendants' Counsel.

        E.      <u>Miscellaneous Provisions Related to Administration of the Settlement Fund</u>

        1.      <u>Disclosure and Treatment of Historic Payments:</u>

        (a)      Certain Defendants, Released Entities and/or their insurance carriers established claims handling facilities and procedures, which were in place prior to the execution of this Agreement.  Through these claims handling facilities and procedures, and through other settlements, certain Settlement Class Members received Historic Payments from certain Defendants or their insurers.

        (b)      Defendants will provide to the Claims Administrator on a confidential basis the name(s) of each person to whom they provided a Historic Payment and the amount of such Historic Payment.  The Claims Administrator will use this information to ensure that no individuals are compensated twice for the same claimed economic damages.  Information provided to the Claims Administrator regarding Historic Payments will be maintained in strict confidence by the Claims Administrator and will not be provided to any other Settlement Class Member, Plaintiffs' Counsel, or counsel for any other Defendant or Released Entity.  Anything to the contrary in this paragraph notwithstanding, Class Counsel may have access to information

relating to a Historic Payment made to Settlement Class Member who initiates an inquiry to Class Counsel with respect to the processing of the Settlement Class Member's claim. Class Counsel agree that they will not use information received from the Claims Administrator and/or a Settlement Class Member related to a Historic Payment for any purpose other to respond to the inquiry initiated by the Claims Administrator or Settlement Class Member, and that they will keep such information strictly confidential.

(c)     If a Settlement Class Member seeks additional amounts above the amount he, she or it was paid in a Historic Payment as a result of this Agreement, the Settlement Class Member must file a Claim Form and shall submit it together with the documentation required, by regular First Class mail, email or via the Settlement website, to the Claims Administrator. The Claims Administrator shall provide a copy to counsel for the Defendant(s) from whom the Settlement Class Member previously received a Historic Payment.

(d)     If a Settlement Class Member who has been reimbursed previously by a Defendant, Released Entity and/or its insurance company for expenses associated with a Dog Treat Product submits a Claim Form, then the reimbursement previously received will be deducted from the total reimbursement due to that Settlement Class Member under this Agreement, if any.

2.     <u>Accounting</u>: The Claims Administrator shall keep and maintain an account of all expenditures, awards, and records and documents received from, or on behalf of, any Settlement Class Member, provided, however, that information provided to the Claims Administrator that would disclose the identities of parties to Historic Payments and the amounts of Historic Payments on an individual basis shall not be disclosed to any other Settlement Class Member, Plaintiffs' Counsel, or counsel for any other Defendant or Released Entity.

3.      Rejection of Claims Due to Conduct of Class Member:  The Claims Administrator may reject, deny or dismiss a Claim based upon fraud, bad faith, or intentional or willful misconduct by a Settlement Class Member who submitted the Claim Form or on whose behalf the Claim Form was submitted.

4.      Deadline to Submit Claims:  All Claim Forms by Settlement Class Members must be initially submitted to the Claims Administrator within one-hundred ten (110) days of the Notice Date ("Claims Deadline").  Any claims submitted to the Claims Administrator thereafter shall be forever barred, unless otherwise permitted by the Court.  However, the Claims Administrator may, in its discretion, permit a Settlement Class Member who makes a timely Claim to remedy deficiencies in such Settlement Class Member's Claim Form or related documentation.  The Claims Administrator shall use its best efforts to distribute the net Settlement Fund to Settlement Class Members within one hundred eighty (180) days of the Effective Date.

5.      Investment and Distribution of Settlement Fund:  The Parties, Defendants, Released Entities, and their counsel shall not have any responsibility or liability whatsoever with respect to the investment or distribution of the Settlement Fund.  In addition, the Parties, Defendants, Released Entities, and their counsel shall not have any responsibility for or liability whatsoever with respect to the determination, administration, calculation or payment of Claim Forms from the Settlement Fund (except as specifically described in this Agreement) or any losses incurred in connection therewith.  Finally, neither the Parties, Defendants, Released Entities, their counsel, nor the Claims Administrator has any responsibility or liability regarding the tax consequences of participating or not participating in the Settlement.

## VII.    OTHER PROVISIONS

### A.    No Admission

Nothing herein shall constitute any admission as to any assertion, claim, or allegation made by any party, or as to the scope of liability.  Defendants specifically deny any wrongdoing or liability, and this Agreement is entered to resolve all claims amicably and does not imply or suggest in any way fault or wrongdoing.  The Parties hereto agree that this Agreement and its Exhibits, and any and all associated negotiations, documents, discussions, shall not be deemed or construed by anyone to be an admission or evidence of any violation of any statute or law, or of any liability or wrongdoing by Defendants or Released Entities, or of the suitability of Plaintiffs' claims for class certification, or of the proper scope of liability under any statute or law, or of the truth of any of the claims or allegations in any of the complaints in the Actions or any other proceedings.

### B.    Agreement Inadmissible In Subsequent Litigation

In the event that the Settlement contemplated by this Agreement is not approved or does not for any reason go forward, the existence of this Agreement, and any of its terms, shall not be admissible in any subsequent litigation, and no Party will ever attempt to introduce this Agreement and Release into evidence in any other legal matter, whether related to the Actions or not.  To the extent that Federal Rules of Evidence 408 and 501 forbid parties from introducing compromises and offers to compromise into evidence in future litigation, the Parties agree not to contest that this Agreement is a compromise or offer to compromise that may not be introduced into evidence in any subsequent litigation.

### C.    Plaintiffs' Attorneys' Fees and Expenses

1.    Application:  Plaintiffs, by and through Class Counsel, will apply to the

Court for payment of attorneys' fees in a total amount not to exceed 33% of the Settlement Fund, plus payment of expenses incurred in the course of the litigation, plus interest earned on both amounts from the time the Settlement Fund is deposited into the Escrow Account until it is paid to Plaintiffs' receiving agent.

        2.    <u>Defendants' Position:</u>  Defendants will take no position on any application by Plaintiffs for their attorneys' fees and expenses.

        3.    <u>Payment from Settlement Fund:</u>  Any attorneys' fees and litigation expenses awarded by the Court in connection with Final Approval of this settlement shall be paid out of the Settlement Fund to Plaintiffs' Counsel for distribution at the sole discretion of Co-Lead Class Counsel.

        4.    <u>Timing of Payment:</u>  Any attorneys' fees and expenses awarded by the Court in connection with Final Approval of the Agreement by the Court shall be paid by the Escrow Agent from the Settlement Fund to Robbins Geller Rudman & Dowd LLP, as receiving agent for Plaintiffs out of the Settlement Fund within three (3) business days of the Effective Date.

        D.    <u>Class Representatives' Service Award:</u>  Subject to approval and modification by the Court, the Class Representatives each shall be paid $5,000.00 in recognition of their time and effort in pursuing the Actions and in fulfilling their obligations and responsibilities as Class Representatives.  Such payments shall be made out of the Settlement Fund for services as the Class Representatives, in addition to any amounts due to them as Settlement Class relief, to be paid by the Escrow Agent within ten (10) business days after Effective Date.  Court approval of Class Representatives' compensation in an amount less than stated herein shall not negate any other provisions of this Agreement, which shall remain fully effective and enforceable.

E.     Press Releases and Other Disclosures

If any Party or counsel for a Party wishes to issue a press release upon execution of this Agreement, or Preliminary Approval or Final Approval of the Settlement contemplated by this Agreement, that Party or counsel shall share a draft of the press release with Class Counsel and Defendants' Counsel with sufficient time for their review and comment prior to its release.  This provision does not apply to any disclosures or statements any Party or their counsel may put on their website or otherwise, or may be required to make pursuant to law or regulation (including, without limitation, any legal or regulatory obligation under applicable securities laws to make timely public filing of this Agreement) and nothing in this paragraph shall limit or restrict the right of such Party to make such disclosures or statements as required, provided that such disclosures or statements are not inconsistent with the Class Notice, or other agreed upon communications concerning the Agreement.

F.     Right to Rescind the Agreement

Defendants' willingness to settle the Actions on a class-action basis and not to contest the accompanying certification of a Settlement Class is dependent upon achieving finality in the Actions and the desire to avoid the expense of this and other related litigation.  Consequently, Defendants have the right to terminate this Agreement, declare it null and void, and have no further obligations under this Agreement by delivering a written notice of termination to Class Counsel if any of the following conditions subsequent occurs:

1.     The Parties fail to obtain and maintain Preliminary Approval of the proposed Agreement as drafted by the Parties; or

2.     Any material objections to the Agreement are sustained by the Court; or

3.      The Court fails to enter a Final Approval Order and Judgment consistent with the provisions in Section IV.H.1; or

4.      The settlement is not upheld on appeal; or

5.      The number of Opt Outs exceeds 250.

Class Counsel shall have the right, but not the obligation, to terminate the Settlement fifteen (15) calendar days after the failure of Defendants to timely pay the Settlement Fund.  The failure of the Court or any appellate court to approve in full the request by Plaintiffs' Counsel for attorneys' fees, costs, and other expenses shall not be grounds for Plaintiffs' Counsel or the Settlement Class to cancel or terminate this Agreement.

If the Agreement is not granted Final Approval by the Court, or it is not upheld on appeal, or it is otherwise terminated for any reason before the Effective Date, the Settlement Class shall be decertified; the Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection therewith, shall be without prejudice to any Party or Released Entity and shall not be deemed or construed to be an admission or confession by any Party or Released Entity of any fact, matter, or proposition of law; and all Parties and Released Entities shall stand in the same procedural position as if the Agreement had not been negotiated, made, or filed with the Court, including but not limited to reservation of defenses including improper service and lack of personal jurisdiction.

G.      <u>Binding Effect</u>

Once Final Approval is granted by the Court, this Agreement shall be binding upon and inure to the benefit of the Parties, including each Settlement Class Member and their successors and assigns, regardless of whether they submit a Proof of Claim form.

H.     Choice of Law

Claims for breach of this Agreement shall be governed by and interpreted according to the substantive law of the State of Illinois without regard to choice of law principles.

I.     No Reliance

Each Party represents and warrants to each other Party that, in executing this Settlement Agreement, he, she or it has not relied, and do not rely, on any statements, inducements, promises, representations or warranties made by or on behalf of any other Party or their agents, representatives or attorneys, except only those specifically set forth in writing in this Settlement Agreement.

J.     No Assignment

The Releasing Parties hereby represent and warrant that they have never assigned, sold, conveyed, transferred or encumbered any claims or causes of action that they ever had against any of the Released Entities.

K.     Entire Agreement; Amendment

1.     Entire Agreement

This Agreement, with its Exhibits, constitutes the entire and complete agreement among the Parties and supersedes all prior agreements, documents and understanding of the Parties related to the subject matter of this Agreement.  This Agreement shall not be modified in any respect except by writing executed by both Defendants' Counsel and Class Counsel.

2.     Amendment

This Agreement may be amended or modified only as provided by a written instrument executed by both Defendants' Counsel and Class Counsel, and approved by the Court.

L.  Continuing Jurisdiction and Exclusive Venue

    1.  Continuing Jurisdiction:

Except as otherwise provided in this Agreement, each of the Parties, including each member of the Settlement Class and Releasing Parties, hereby irrevocably submits to the exclusive jurisdiction and venue of the United States District Court for the Northern District of Illinois for any suit, action, proceeding, case, controversy, or dispute and relating to this Agreement and/or Exhibits hereto and negotiation, performance, or breach of same.

    2.  Parties Shall Not Contest Jurisdiction

In the event of a case, controversy, or dispute arising out of the negotiation of, approval of, performance of, or breach of this Agreement, and solely for purposes for such suit, action, or proceeding relating to this Agreement, to the fullest extent that they may effectively do so under applicable law, the Parties and Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the United States District Court for the Northern District of Illinois, or that such Court is in any way an improper venue or an inconvenient forum, solely for purposes for such suit, action, or proceeding relating to this Agreement.

M.  Notices

Any notices as to this Agreement shall be sent by First Class mail to counsel for the Parties at the addresses listed below.

| **Co-Lead Class Counsel** | **Counsel for Defendants** |
|---|---|
| Rachel L. Jensen | Craig A. Hoover, Esq. |
| Stuart A. Davidson | E. Desmond Hogan, Esq. |
| Phong L. Tran | Miranda L. Berge, Esq. |
| ROBBINS GELLER RUDMAN | HOGAN LOVELLS U.S., LLP |
|   & DOWD LLP | Columbia Square |
| 655 West Broadway, Suite 1900 | 555 Thirteenth Street, NW |
| San Diego, California 92101 | Washington, D.C. 20004-1109 |

N.      <u>Authority</u>

Each of the undersigned attorneys for Plaintiffs represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.  Each of the undersigned shall use his or her reasonable efforts to effectuate this Agreement.

O.      <u>Communication with Customers, Business Contacts, and Members of the Public</u>

Defendants reserve the right to communicate with their customers, business contacts, and members of the public in the ordinary course of business without need to submit the communications to the procedure provided in Section VII.E above.

P.      <u>Headings for Convenience Only</u>

The headings in this Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

Q.      <u>No Party is the Drafter</u>

None of the Parties to this Agreement shall be considered to be the primary drafter of this Agreement or any provision hereof for the purpose of any rule of interpretation or construction that might cause any provision to be construed against the drafter.

R.      <u>Singular and Plural</u>

Unless the context of this Agreement clearly requires otherwise, references to the plural include the singular, and the singular the plural.

S.      <u>Computation of Time</u>

In computing any period of time prescribed or allowed by this Agreement, the provisions of Federal Rule of Civil Procedure 6 shall govern.

T.      <u>Cooperation</u>

Class Representatives, Class Counsel, and the Defendants agree to move the Court to

enter an order to the effect that should any Person desire any discovery incident to (or which the person contends is necessary to) the approval of this Agreement, the person must first obtain an order from the applicable Court that permits such discovery. In addition, Plaintiffs' Counsel agree to cooperate with Defendants and their counsel in the filing of any motions to enforce the Court's Preliminary Approval Order staying any litigation of Released Claims or to enforce the Court's Final Approval Order enjoining the litigation of the Released Claims as provided in Sections IV.C and V.D.

U.      Signatures

The signatories to this Agreement may execute it in counterparts, each of which shall be deemed an original. Signatures may be provided via facsimile or in portable document format ("PDF").

V.      Integration

This Agreement and its exhibits and attachments constitute the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement or its exhibits and attachments other than the representations, warranties, and covenants contained and memorialized in such documents.

Executed and delivered on May 28, 2014, as amended on October 28, 2014.